FULLER *vs.* DUREN.

[APPEAL FROM JUSTICE'S COURT, ON COMMON COUNTS IN ASSUMPSIT.]

1. *When assumpsit lies.*—If the defendant has wrongfully sold the plaintiff's property, and received for it money, or something else as money, the plaintiff may waive the tort, and maintain assumpsit for the money; but this principle does not apply, where the defendant has simply exchanged the property, and has not sold or otherwise disposed of the property obtained in exchange.
2. *When recovery may be had under common counts.*—Under a complaint containing only the common counts for money had and received, and for goods sold and delivered, a recovery cannot be had for the breach of a special contract, by which the plaintiff authorized the defendant to sell a horse belonging to them both jointly, and which the defendant violated by exchanging the horse for another, and retaining the latter as his own property.

APPEAL from the Circuit Court of Tallapoosa.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Mrs. Malila Duren, against Gallatin Fuller, and was commenced in a justice's court. After the removal of the cause to the circuit court, the plaintiff there filed a complaint in the following words: "The plaintiff claims of the defendant fifty dollars, for goods, wares and merchandise, sold by plaintiff to defendant on the 1st of January, 1857; and the further sum of fifty dollars, for money had and received by the defendant, to and for the use of the plaintiff, on the 1st January, 1857, with interest thereon." The defendant pleaded the general issue, "in short by consent, with leave to give anything in evidence that might be specially pleaded in

6

bar, and with like leave to the plaintiff by way of rep-
lication.

"On the trial," as the bill of exceptions states, "the
testimony offered in behalf of the plaintiff tended to
show, that she was a widow when the suit was com-
menced; that her late husband, a short time before his
death, applied to the proper department at Washington
for a forty-acre land-warrant, but died before the warrant
was received, and before the result of his application was
known; that the warrant came to hand soon after his
death, and the plaintiff endeavored to dispose of it, but
was unable to do so, because there had been no adminis-
tration on his estate, which was too small to bear the
expense of an administration; and that she then requested
the defendant to assist her in disposing of said land-
warrant, or to dispose of the same for her. In conse-
quence of this request, as the evidence further showed,
the defendant did assist plaintiff to dispose of said land-
warrant in the following manner: Defendant met with
one Pike, who wished to trade a small pony filly for
land-warrants, and told him, that he had a warrant of his
own, and thought he knew where he could get another;
that he was indebted to the plaintiff, and that she had a
warrant of her own. Defendant and said Pike thereupon
went to plaintiff's house, where the trade was consum-
mated for the filly; each of the land-warrants being esti-
mated at $50, and the filly at $100. The proof tended
to show, that the filly was delivered by Pike to the
plaintiff, that the trade was made with her, and that the
defendant let her have his land-warrant for that purpose;
while, on the other hand, the proof tended to show, that
the trade was made by defendant, in the presence of
plaintiff, with her knowledge and consent, and for their
mutual benefit; that the defendant put in his warrant
merely to enable plaintiff to dispose of hers, and that the
filly was delivered by Pike to defendant, or to him and
plaintiff jointly. The proof further tended to show, that
the plaintiff did not at that time owe the defendant any-
thing; that he said this merely to afford a reason for
letting her have his warrant; and the plaintiff herself

admitted, while testifying in the case, that the defendant did not owe her anything at that time. The proof tended. to show, also, that while the filly was in the defendant's possession, he traded or swapped her off for another horse, before the commencement of this suit; that the defendant's land-warrant, which was regular in all respects, was worth in market $44 at the time the trade with said Pike was made, in January or February, 1854, while the plaintiff's warrant was worth nothing in market. The plaintiff's evidence tended to show, that the filly was worth from $80 to $100; the defendant's, that she was worth from $70 to $75. The plaintiff's evidence further tended to show, that the defendant had proposed to pay her for her interest in the filly after he had swapped her off; that the plaintiff refused to accept what he offered her, but had received $25 from him. The defendant's evidence tended to show, that he had paid plaintiff $30 on account of her interest in the filly; and that the filly and horse were each worth from $70 to $75. The proof tended to show, also, that the plaintiff had no use for the filly obtained from Pike, and had requested defendant to sell it, and to pay her one-half the money he might obtain; that defendant tried to do so, but could not get $70 for her; that he sold one of his own horses, of which he had a surplus, and used the filly a week or two in making his crop before he swapped her off; that defendant and Pike both knew how plaintiff came into the possession of the land-warrant, and that there was no administration on the estate of plaintiff's husband. Pike testified, that he sold the land-warrant obtained from plaintiff at a profit, and had always been satisfied with the trade. The proof showed, also, that the defendant had not received any money for the filly, or the one he swapped for.

"Thereupon, the court charged the jury, that if they believed from the evidence, that defendant told Pike, that he owed plaintiff some money, that he and plaintiff each had a land-warrant, and that if Pike would go with him to plaintiff's house, he would let her have his warrant in payment of what he owed her, and that plaintiff could, with that and the warrant she held in the name of

her deceased husband, give Pike a trade for his filly; that Pike and defendant, in pursuance of this representation on the part of the defendant, did go over to plaintiff's house, and, with full knowledge of the fact that the warrant held by plaintiff was issued in the name of her deceased husband, and that there had been no administration on his estate, induced the plaintiff to part with said warrant, and agreed that it should be valued at $50 in the trade; and that the same was so valued in the trade; and that Pike took both warrants, valuing each at $50, in payment for the horse, the defendant consenting thereto; and that plaintiff and defendant agreed that the horse should belong to both of them equally; and that Pike has since sold at a profit the warrant obtained from plaintiff, and is satisfied with the trade,—then the defendant is estopped from saying that no part of the title to the filly is in the plaintiff, and the latter would have an equal interest with him in the filly; and that if the defendant afterwards took said filly, at the request of plaintiff, to sell and pay her one-half the amount realized from the sale, and, instead of selling her, sold one of his own horses, and worked the filly a week or two in making his own crop, and then swapped her off, taking another horse in exchange for her, then plaintiff would be entitled to recover of defendant one-half the value of the said filly, with interest on the same from the time defendant swapped her off to the present."

This charge, to which the defendant excepted, is now assigned as error.

L. E. PARSONS, and J. FALKNER, for appellant.

BROCK & BARNES, contra.

R. W. WALKER, J.—Inasmuch as assumpsit lies only upon a promise, express or implied, and not to recover damages for torts or trespasses, a mere conversion of the goods of the plaintiff, without any sale of them, will not support the action. The doctrine of waiving a tort and bringing assumpsit is confined to cases where the defendant has disposed of the plaintiff's property, and received

either money, or some article or thing as money.—Pike v. Bright, 29 Ala. 336 ; Crow v. Boyd, 17 *ib.* 51; Strother v. Butler, 17 *ib.* 733. If the property has been sold, it makes no difference whether the price is received in money, or in a chattel at an estimated price, for money. Arms v. Ashley, 4 Pick. 71; Mason v. Waite, 17 Mass. 560; Stewart v. Conner, 9 Ala. 813; Cameron v. Clarke, 11 *ib.* 259.

But there is a material distinction between a sale and an exchange, or a bargain of barter; and where one chattel is exchanged for another, no price being attached, it is not a sale.—Gunter v. Leckey, 30 Ala. 596. The transaction by which the defendant disposed of the filly, was strictly an exchange, not a sale. There is nothing from which we can infer that the defendant received the horse he obtained in exchange as so much money, for it does not appear that the value of either chattel was measured in money terms; nor is the fact, that the defendant paid the plaintiff some $25 or $30 on account of her interest in the filly, at all inconsistent with the idea, that he had not sold the property for money, or for anything else which was taken as money.

If it was shown, or could be fairly inferred from the evidence, that the horse substituted for the filly had been sold by the defendant, the plaintiff would, perhaps, be entitled to recover in this suit. But the bill exceptions expressly negatives this, and repels any inference that the horse had been converted into money, by the explicit statement that "the defendant had not received any money for the filly, or the one he swapped for."

If, therefore, the *gravamen* of the action is the conduct of the defendant, first in working the filly on his farm, and then in exchanging her for a horse, which he appropriated to his own use, there can be no recovery in assumpsit.—Willet v. Willet, 3 Watts, 277; Jones v. Hoar, 5 Pick. 285; 6 Rich. 159.

[2.] If it be said, that the facts supposed in the charge of the court show that there was a contract between the parties, which the defendant has broken, the answer is, that though the plaintiff might recover for such a breach

in assumpsit, she can only do so under a special count alleging the contract and breach. The complaint in this case contains only the common counts, for money had and received, and for goods sold. The rule that the plaintiff cannot recover by proving a cause of action different from that alleged, applies in appeal cases, as well as other suits.—Smith v. Causey, 28 Ala. 655–658. Whether the plaintiff's right of recovery be rested on the defendant's conversion of her property, or on the breach of a special contract, is, therefore, immaterial, for neither one of these causes of action was alleged in the complaint.

We are constrained to hold, that the court erred in the charge given.

The judgment must be reversed, and cause remanded.