[Fielder, Ex'r, v. Childs.]

# Fielder, Ex'r, *v.* Childs.

### *Assumpsit for use and occupation.*

| | |
|---|---|
| 73 | 567 |
| 93 | 574 |
| 73 | 567 |
| 94 | 155 |
| 73 | 567 |
| 109 | 277 |
| 73 | 567 |
| 121 | 195 |
| 73 | 567 |
| 132 | 674 |

1.  *Sale of decedent's lands; what interest passes under.*—A decree of the probate court ordering, on the petition of the personal representative of a decedent's estate, the sale of lands, and a sale and conveyance made thereunder, must be taken and construed in connection with the petition; and hence, if the petition, averring that the decedent owned and possessed, at the time of his death, a designated undivided interest in the lands, seeks only the sale of that interest, a decree ordering the sale of the entire estate in the lands, and a sale and conveyance made under and in pursuance of the decree, pass to the purchaser only the designated interest described in the petition, constituting him a tenant in common with the other owners.

2.  *Estoppel in pais; owner of land not affected by, in court of law.*—If the fact that such sale was consented to by the mother and guardian of two of the other owners of the lands, who were minors, and she received their share of the purchase-money, for which she afterwards fully accounted to them, is available to estop them from asserting their legal estate in the lands, the estoppel can only prevail in a court of equity; as a court of law looks to, and recognizes only the legal estate in lands, and takes no cognizance of the equities of the parties dependent upon matters *in pais.*

3.  *Tenants in common; liability for use and occupation.*—It is a rule of the common law, unchanged by the statutes of this State, that the mere occupation by a tenant in common of the entire estate or premises does not entitle his co-tenants to call him to account for rents, or render him liable to an action by them for use and occupation.

4.  *Purchase of lands by administrator at his own sale; not void, but voidable only.*—Where an administrator purchases lands at his own sale, made under a decree of the probate court, and, on confirmation of the sale, a conveyance is executed to him by a commissioner appointed by the court for that purpose, the sale is not void, but voidable merely, at the election of parties having adverse interests, seasonably made in a court of equity; and until avoided, the legal estate remains in him.

5.  *Tenants in common; when possession of one presumed to be possession of all.*—The entry and possession of one tenant in common are ordinarily presumed to be the entry and possession of all the tenants; and this presumption prevails in favor of all, until there is some open, notorious act of ouster and adverse possession by the tenant entering and holding, brought home to the notice or knowledge of his co-tenants.

6.  *Same; when possession of one tenant adverse.*—Where a purchaser of lands at a sale made by the administrator of a deceased tenant in common enters into and takes possession of the whole premises, under a deed purporting to convey the entire interest in the lands, but, in fact, only conveying the undivided interest of the deceased tenant, and continues therein, claiming for himself the entirety in fee simple in the capacity of sole and exclusive proprietor, and taking and appropriating for his own use the rents and profits, these open, unequivocal, and notorious acts of ownership render his possession adverse and hostile to the title of the co-tenants, and are equivalent to an actual ouster, and of an utter disseisin.

[Fielder, Ex'r, v. Childs.]

7. *Same; when deed color of title.*—While the deed, in such case, may be insufficient to pass the legal estate to more than the interest of the deceased tenant in the lands, and, as to the interests of the other tenants, it may be void, it is nevertheless color of title; and a possession under it, asserted as exclusive, and in hostility to the title of the true owners, is adverse. .

8. *Assumpsit for use and occupation; when one tenant in common can not maintain against another.*—In such case, the other tenants in common can not maintain an action of assumpsit for use and occupation against the purchaser so entering and holding.

9. *Same; what necessary to maintain*—The indispensable element to support the action of assumpsit for use and occupation, both at common law and under the statute, is the conventional relation of landlord and tenant, or an entry into possession in recognition of, and in subordination to the title, or a holding by the permission of the landlord, estopping the tenant from denying or claiming the title, or drawing it into controversy.

APPEAL from Bullock Circuit Court.

Tried before Hon. H. D. CLAYTON.

This was an action of assumpsit brought by Lula J. Childs and Thomas L. Fielder, infants, suing by their next friend, against Elvira H. Fielder, as the executrix of the last will and testament of James H. Fielder, deceased, for the use and occupation of certain land, in the complaint described, by defendant's testator, from 1st January, 1864, to 1st January, 1869; and it was commenced on 22d March, 1881. The defendant pleaded the general issue, "with leave to give in evidence any matter which might be specially pleaded; and it was agreed that any pleas which might be pleaded under the facts agreed on by the parties, in bar of the recovery of the amount sued for, or in bar of the recovery of any portion of such amount, should be considered and treated as fully as if the same were formally and fully set out and pleaded." The cause was tried on issue joined on this plea, the trial resulting in a verdict and judgment for the plaintiffs. .

There was an agreement as to the facts, which was read in evidence, and which is, in substance, as follows : L. B. Fielder was killed in battle on the 2nd July, 1862, seized of an undivided one-fifth interest in and to the land, for the use and occupation of which this suit was brought, and leaving a will, by which he devised to Thomas L. Fielder, the plaintiffs' father, an undivided one-fourth of his one-fifth interest, the said Thomas L. being, at the time of the death of the said L. B. Fielder, the owner of an undivided two-fifths interest in said land. On 16th March, 1863, the will was duly probated in the Probate Court of Pike county, in this State, and James H. Fielder, the defendant's testator, was duly appointed administrator, with the will annexed, of his estate. In December, 1862, the said Thomas L. Fielder died, seized and possessed of the undivided interest in said land which he acquired under the will of the

said L. B. Fielder, and also the additional undivided two-fifths interests therein which he owned at the death of the said L. B. Fielder; and leaving a last will and testament, by which he devised and bequeathed all his property to his widow, Jane A. H. Fielder, during her widowhood, and directing, on her marriage, that his property should be divided between her and his children, she taking, as her portion of the estate, what she would be entitled to, under the laws of this State, "as her dower and distributive share." Said will was afterwards duly admitted to probate in the Probate Court of Pike county, and letters testamentary thereon were granted to her, she having been nominated as executrix in the will. The plaintiffs were the only surviving children of the said Thomas L. Fielder; and the said widow married again in August, 1864.

On 21st September, 1863, James H. Fielder, as the administrator of the estate of L. B. Fielder, filed in said probate court a petition for the sale of the undivided one-fifth interest in said land of which said decedent died seized and possessed, for division; and on 13th November, 1863, a decree of sale was made and entered on said petition. The language of this decree is broad enough, when read by itself, to have authorized the sale of the entire interest and estate in the land, and not merely the undivided one-fifth interest therein, described and sought to be sold in the petition. On 11th December, 1863, under the decree of sale, and by and with the consent of the said Jane A. H. Fielder, the widow and executrix of the plaintiffs' father, who also appears to have been their guardian, they being minors, and of the other tenants in common, the said administrator sold the entire interest and estate in said land, including not only the interest sought to be sold in the petition, but also the undivided two-fifths interest which the plaintiffs' father owned prior to the death of the said L. B. Fielder, and the interests of the other tenants in common; and at the sale he became the purchaser. The sale was soon thereafter reported to the court, and by it confirmed, and a deed was executed to the said purchaser, defendant's testator, by a commissioner appointed by the probate court for that purpose; and thereupon he entered into the actual possession of said land under his purchase, and continued therein until 10th November, 1869, when he sold, and by deed with warranty conveyed it to one Delbridge, who then took, and has since held possession of the same. During the time the defendant's testator was in possession of said land, he claimed it under his said purchase, and did not recognize "any claim or interest of plaintiffs in the same." It was further admitted, in substance, that the purchase-money for said land was fully paid, two-fifths thereof to Jane A. H. Fielder; that, on a final settlement made by the said

[Fielder, Ex'r, v. Childs.]

James H. Fielder of his administration upon the estate of L. B. Fielder, he "accounted for the proceeds of the sale of L. B. Fielder's one-fifth interest in said land;" and that, on a final settlement made in April, 1865, by Jane A. H. Fielder, as the executrix of the last will and testament of Thomas L. Fielder, she "charged herself, among other things, with the sum of $5440, which was the proceeds of the sale of the two-fifths interest of her testate in the said land, and which sum had been received by her from said sale of December 11th, 1863."

The bill of exceptions purports to set out all the evidence, the substance of which, so far as material, is stated above. The court charged the jury, at plaintiffs' written request, that if they believe the evidence, "they will find for the plaintiffs for two-thirds of two-fifths of the annual rent of the land in the possession of James H. Fielder, during the time he held the actual possession, with interest to this date." The court refused to charge, at defendant's written request, that if they believed the evidence, they must find for her. To these rulings the defendant duly excepted; and they are here assigned as error.

H. C. TOMPKINS, with whom was F. LAW, for appellant. (1) If the sale of the land was void, as is insisted by plaintiffs, then it is clear that James H. Fielder's holding was adverse to the plaintiffs; he claimed the lands as his own, and did not recognize the rights of plaintiffs.— *Weaver v. Jones*, 24 Ala. 420; *Gillaspie v. Osburn*, 13 Am. Dec. 136; Adams on Eject. p. 54, and note 1; Tyler on Eject. & Ad. Pos. p. 861; 4 Wait's Ac. & Def. p. 179. If Fielder's possession was adverse to plaintiffs' title, it is perfectly clear that no action for use and occupation will lie in their favor. In such a case, they must resort to the action of trespass.— *Weaver v. Jones, supra;* *Butler v. Cowles*, 19 Am. Dec. 612; *Smith v. Stewart*, 6 Johns. 46; *Lankford v. Green*, 52 Ala. 103. (2) But if Fielder's possession was not adverse, the lands were sold by the consent of the other tenants in common, and were paid for. By the sale and purchase Fielder then acquired a perfect equity to the interests of such other tenants, and became a tenant in common with plaintiffs. The law is now well settled that where one tenant in common *occupies*, as in this case, instead of renting out, the whole, or the whole of a part of the common estate, no action will lie against him in favor of his co-tenants for rent. *Everts v. Beach*, 18 Am. Rep. 169; *Chambers v. Chambers*, 14 Am. Dec. 585. This was the universal rule at common law, and to remedy it, the statute of 4 and 5 Anne was passed; but we have no such statute in this State. This rule must not be confounded with the rule in cases where one co-tenant rents out the common property, with the assent of his co-tenants, and

[Fielder, Ex'r, v. Childs.]

receives the entire rent. In such cases, it is held that such co-tenants may maintain an action for their share of the money so received. But the action in this case is not of that character, nor do the admitted facts show any renting out by Fielder, but a personal occupancy. (3) Though the deed executed to Fielder by the commissioner may be void, yet, his holding under it is under color of title.—*Allen v. Kellam*, 69 Ala. 442; *Tate v. Southard*, 14 Am. Dec. 578, and notes; *Molton v. Henderson*, 62 Ala. 426. It is the policy of our law to shorten the period for which rent may be recovered of one claiming land under color of title. It has, therefore, been enacted that such persons shall not be responsible for rent for more than one year before the commencement of the suit. This rule is not limited to the recovery of rents in actions for the real estate itself, but applies to all actions, in which such recovery is sought, whether at law or in equity.—Code of 1876, § 2966; *Dozier v. Mitchell*, 65 Ala. 511. Rent being claimed in this suit for the years 1864–69, inclusive, and the last year for which rent is claimed being more than eleven years prior to the commencement of the suit, the plaintiffs must fail on this ground.

J. N. ARRINGTON and DAVID CLOPTON, *contra*. (No brief came to the hands of the reporter.)

BRICKELL, C. J.—The action is assumpsit for use and occupation, and the counts of the complaint, upon which the trial was had, are in the form prescribed by the Code. The facts were agreed upon, and the plaintiffs' right of recovery was probably rested upon one or the other of two propositions. The first is, that as the decree of the court of probate author-ized only the sale of the estate or share in the lands of the deceased tenant, L. B. Fielder, shown by the application to the court, on which the decree is founded, to be an undivided one-fifth, though the conveyance to the testator of the appellant purports, if not read in connection with the application, to pass the entirety in the lands, the testator became a tenant in common with the surviving tenants, and having used and occupied the whole of the lands, taking to himself the rents and profits, is bound to account to his companions for their respect-ive shares of such rents. The other proposition is, that the conveyance to the testator, so far as it may purport to pass the entirety to the lands, is void and inoperative as to the plaintiffs, not impairing or defeating their share or estate, and though under it the testator may have entered, claiming and holding in hostility to the title of the plaintiffs, they may waive the trespass, and in assumpsit for use and occupation recover their

share of the rents, as upon an implied contract.   These propo-. sitions it is matter of convenience to consider separately.

The court of probate has jurisdiction, upon the petition of the personal representative disclosing a statutory ground for sale, to order the sale of any estate or interest in lands, legal or equitable, descendible to heirs, whether it is held in severalty, or in common with others.   The sale is judicial, and passes only the *quantum* of the estate or interest of the decedent.—*Perkins v. Winter*, 7 Ala. 855; *Evans v. Matthews*, 8 Ala. 99; *Jennings v. Jenkins*, 9 Ala. 285; *Duval v. P. & M. Bank*, 10 Ala. 636; *Vaughan v. Holmes*, 22 Ala. 593.   A conveyance by a tenant in common of his undivided share of the estate to a stranger, or its alienation and conveyance by operation of law, converts the alienee into a tenant in common with the other tenants.   They hold by several and distinct titles, each has a distinct, though undivided or unascertained share or interest, each is entitled to possession, and the possession of one, if not in hostility to, and open, intentional exclusion of the others, is the possession of all in contemplation of law.—1 Wash. Real Prop. 568; 4 Kent, 408.   The proceedings in the court of probate for the sale of lands of deceased persons, at the instance of the personal representative, are *in rem*.   The petition of the representative, disclosing a statutory ground for the sale, calls into exercise the jurisdiction of the court, when it is recognized by the court, and the decree of sale, and the conveyance made under the order of the court are of necessity referred to it, and are taken and construed in connection with it.   If we disconnect the sale and conveyance to the testator of the appellant, under the decree and order of the court of probate, from the fact that, by consent of some of the tenants, and by consent of the mother, the co-tenant and guardian of the plaintiffs, the entire estate was sold, the testator, by his purchase and the conveyance to him, would have acquired only the share or estate of the deceased tenant, shown by the application to be one-fifth, however general may be the language of the decree and of the conveyance, and he would have become a tenant in common with the surviving tenants.   Standing in that relation, not asserting a hostile title, his entry and possession, though he may have occupied the entire premises, taking to himself the whole profits, would not have amounted to an ouster of his companions.—*Abercrombie v. Baldwin*, 15 Ala. 363.   The mere occupation by a tenant in common of the entire estate or premises, by the common law, does not entitle his co-tenants to call him to account, nor render him liable to an action at their instance for use and occupation.   The statute of 4 Anne, c. 16, which has been in some of the States substantially re-enacted, renders joint tenants and tenants in

[Fielder, Ex'r, v. Childs.]

common liable to account for receiving more than their just share of the rents and profits. It has not been re-enacted in this State, nor have we any similar statutory provision. The common law remains unchanged, and nothing is better settled, than that the mere occupation of premises owned in common by one of the tenants does not render him liable for rents to his companions.—*Newbold v. Smart*, 67 Ala. 326; *Terrell v. Cunningham*, 70 Ala. 100. The first proposition upon which we have said the plaintiffs' right of recovery may be rested, can not, therefore, be maintained.

The sale and conveyance of the share or interest of the plaintiffs in the lands, though made with the consent of their mother, who was their guardian, and a co-tenant with them, were void and inoperative. The share of the purchase-money to which they would have been entitled, if the sale had been valid, may have been paid to the mother as guardian, and she may have accounted for it fully upon the settlement of her guardianship. If these facts are available to estop the plaintiffs from asserting their legal estate in the lands, the estoppel can prevail only in a court of equity. A court of law looks to, and recognizes only the legal estate in lands; it takes no cogni-zance of the equities of the parties dependent upon matters *in pais.*—*Mitchell v. Robertson*, 15 Ala. 412; *McPherson v. Walters*, 16 Ala. 714; *Gimon v. Davis*, 36 Ala. 589; *Kelly v. Hendricks*, 57 Ala. 193.

The legal estate of the testator of the appellant, it is not then to be doubted, comprehended only an undivided one-fifth of the lands, the share or estate of the deceased tenant to which he succeeded by the sale and conveyance under the decree of the court of probate, and thereby he became tenant in common with the surviving tenants. This is the extent of his legal estate, and this is his legal relation. That he was the purchaser at a sale made by himself as administrator, in a court of law, does not change the character of his estate, or the nature of his relation. In a court of equity, at the election of the parties having adverse interests, seasonably expressed, the sale could be avoided, and the legal estate divested; but the sale was not a nullity; it is not void; it is only voidable; and until avoided, the legal estate remains in the testator. A court of law can not assume to avoid it, directly or collaterally, for it is incapable of moulding and adapting relief to the circumstances of the particular case, meeting its exigencies or necessities.

The entry and possession of one tenant in common is ordinarily presumed to be the entry and possession of all the tenants; and this presumption prevails in favor of all, until there is some open, notorious act of ouster and adverse possession by the tenant entering and holding, brought home to the notice or

knowledge of his companions.—*Abercrombie v. Baldwin*, 15 Ala. 363; *Johnson v. Toulmin*, 18 Ala. 50; *Tillotson v. Kennedy*, 5 Ala. 407. The perception of the entire rents and profits by one tenant in common will not, of itself, repel the presumption, or operate a disseisin of the co-tenants; nor will acts of ownership, which, if done by one entering under a hostile claim of title, would be regarded as evidence of disseisin, necessarily be construed as such as against the co-tenants.—*Johnson v. Toulmin, supra.* There must be an *actual ouster;* or there must be an entry and continuous exclusive possession, taking the rents and profits, under a claim of exclusive right, which is the equivalent of an *actual ouster.* In *Prescott v. Nevers*, 4 Mason, 330, it was said by Judge Story: "There can be no legal doubt, that one tenant in common may disseise another. The only difference between that and other cases is, that acts, which, if done by a stranger, would *per se* be a disseisin, are, in the case of tenancies in common, susceptible of explanation consistently with the real title. Acts of ownership are not, in tenancies in common, necessarily acts of disseisin. It depends on the intent with which they are done, and their notoriety. The law will not presume that one tenant in common intends to oust another. The fact must be notorious, and the intent must be established in proof."

The agreed statement of facts leaves no doubt or uncertainty as to the character of the entry and of the continuous possession of the testator of the appellant. Having a legal title to an undivided one-fifth of the estate, he could have entered as a tenant in common, and as such remained in possession of the entire premises. But it was not in that capacity or relation that he entered, and continued in possession until he made sale and conveyance of the premises as if he were the sole proprietor, warranting the title to be a fee simple. It was under claim, and in the capacity of sole and exclusive proprietor, that he made entry, taking possession of the whole premises, claiming for himself the entirety in fee simple and of right, taking and appropriating for his own use the rents and profits. These open, unequivocal, notorious acts of ownership rendered his possession adverse and hostile to the title of the co-tenants; they are the equivalent of an *actual ouster*, and of an *utter disseisin*. The conveyance under which the entry was made may be insufficient to pass the legal estate to more than one-fifth of the premises, and, as to the plaintiffs, and their share or estate, may be void; it was nevertheless *color of title*, and a possession under it, asserted as exclusive and in hostility to the title of the true owner, is adverse.—*Abercrombie v. Baldwin*, 15 Ala. 363; *Dillingham v. Brown*, 38 Ala. 311; *Miller v.*

[Fielder, Ex'r, v. Childs.]

*State, Ib.* 600; *Molton v. Henderson,* 62 Ala. 426; *Riggs v. Fuller,* 54 Ala. 141.

The action of assumpsit for use and occupation will not, at common law, lie against a mere trespasser, whose entry and possession is tortuous; nor will it lie against the tenant in possession holding adversely; nor in any case, when the entry was not permissive, and the facts are all in repudiation of the relation of landlord and tenant, or of a holding in subordination to the true title. The concurring facts of title in the plaintiff, and use and occupation by the defendant are not of themselves sufficient to support the action. This seems to be the uniform, unvarying language of the authorities.—Taylor's Land. & Ten. § 636. If there be no such relation between the parties as estops the defendant from disputing the title of the plaintiff— if the defendant is in possession tortuously, holding adversely to, and not under license from the plaintiff, there could not be a recovery for use and occupation upon the mere strength of the plaintiff's title, unless, in a transitory personal action, founded on contract, the issues of an action of ejectment, or other corresponding real action, were tried and determined. The proposition is general, if not universal, that the law will not permit the title to lands to be inquired into directly in personal actions. There are more appropriate remedies appointed for contests of title, which parties must pursue. They are adequate to the redress of the wrongs they are designed to remedy, and it would be attended with perplexing confusion and great practical mischief, if parties were not limited and confined to them.—1 Smith, Lead. Cases (7th Amer. Ed.), 660; *Cooper v. Watson,* at present term [*ante,* p. 252]. The question has been of frequent consideration in this court, and though there may be some seeming discrepancy in the language of the decisions, the result of them is correctly stated by Chilton, C. J., in *Weaver v. Jones,* 24 Ala. 423, that "the action of assumpsit will not lie, in the absence of a contract either express or implied; and no contract for the payment of rent is implied by law, as against a mere naked trespasser;" and where there is no demise, express or implied, and no permissive holding, the action can not be supported. The rule announced in *Catterlin v. Spinks,* 16 Ala. 467, that the owner of a term of years, after its expiration, could waive the trespass of one, who, without his permission, entered and occupied during the term, is not capable of extension to any other case, and in that case was recognized, because otherwise the party would have been remediless. It may be remarked of that case, as it was in effect by the court, that the form of the action was not there material. The sum in controversy was less than twenty dollars; the suit originated before a justice of the peace having jurisdiction,

whether the action was *ex delicto*, or *ex contractu ;* and upon appeal, was triable *de novo* upon its merits, without regard to errors or omissions in the description of the character of the action in the proceedings before the justice.

At common law, general *indebitatus assumpsit* for use and occupation would not lie where there was an express demise for a fixed term, or rent and an express promise to pay it; "because, an action merely for rent arrear sounding in the realty, debt was the exclusive remedy." Special assumpsit, it is said, would lie on an express demise, where there was an express promise to pay, after enjoyment had, the promise being regarded as collateral to the tenancy. If there was an express demise, and there was not, after enjoyment had, an express promise to pay rent, a plaintiff suing in assumpsit was liable to be nonsuited. The restriction upon the action of assumpsit was removed, in some degree, by the statute, 11 Geo. II c. 19, of which the territorial statute of 1812 (Clay's Dig. 505, § 1), remaining of force until the adoption of the Code of 1852, was a substantial, if not a literal re-enactment.—Taylor's Land. & Ten. §§ 635–6, and notes. The act of 1812 is not in its own terms incorporated into the Code. But the Code, with explicitness, declares when an action for use and occupation can be maintained, limiting it to three distinct, defined cases. The first is, "when there has been a demise by deed, or by parol, and no specific sum agreed on as rent," which was the case for which the act of 1812 specially provided. The second is, "when the tenant has been let into possession upon a supposed sale of the lands, which, from the act of the defendant, has not been consummated." The third is, "when the tenant remains on the land by the sufferance of the owner." There is also a provision for the recovery of double rent against a tenant holding after notice to quit. The second case, that of a purchaser entering under a contract of purchase, which he subsequently renounces or refuses to consummate, is the precise case decided by this court in *Davidson v. Ernest*, 7 Ala. 817, and in *Smith v. Wooding*, 20 Ala. 324. In this particular, the statute is a simple affirmation of a rule of the common law, which this court had declared. It is very often true, that into the Code is incorporated rules and principles of the common law derived from the decisions of this court; and that there is an accommodation of statutes to the judicial construction which they had received. The third case, that of the tenant remaining on the land "by the sufferance of the owner," was doubtless derived from the decisions in *Hays v. Goree*, 4 St. & Port. 170, and in *Smith v. Houston*, 16 Ala. 111, in which there was an entry under an agreement with the owner, or in open avowal of subordination to his title, accompanied by a promise, or the

[Fielder, Ex'r, v. Childs.]

expression of a willingness to pay rent, and a continuance in possession, after the right to hold under the permission of the owner had terminated. In each case, the statute refers to an entry and possession by the consent or permission of the owner, and is not capable of a construction which will embrace a tortuous entry in hostility to him. It is the tenant remaining on lands by *the sufferance of the owner*, who is liable in a *quantum meruit* for use and occupation. A tenant *at sufferance* is as well known to the law, as a tenant at will, or a tenant for years. The books define such a tenant, as "one that comes into the possession of land by lawful title, but holdeth over by wrong, after the determination of his interest."—4 Kent. 131; 1 Wash. Real Prop. 533. The rightful entry is the characteristic distinguishing him essentially from a trespasser, or a naked wrong-doer. The indispensable element to support the action for use and occupation, prior to the statute, and under its provisions, is the conventional relation of landlord and tenant; or an entry into possession, in recognition of, and in subordination to the title, or a holding by the permission of the landlord, estopping the tenant from denying or claiming the title, or drawing it into controversy. This is the element, drawing the parties, if not into the technical relation of landlord and tenant, into a relation from which similar rights and duties result, and which is clearly distinguishable from that of the true owner and a naked trespasser, or an adverse, hostile possessor.

There are cases of the conversion by a tenant in common of chattels, the subject of the tenancy, in which the co-tenant may waive the tort, and sue in assumpsit, as upon contract to pay him for the value of his share or interest. But the action is maintainable only when the conversion is by sale, and there is the reception of money, or of some article or thing as money, as the equivalent of the value or price of the chattel converted. The recovery is then limited to the plaintiff's share of the money, or its equivalent, derived from the sale. But if there is no sale, if there is a mere tortuous conversion, the action will not lie.—*Strother v. Butler*, 17 Ala. 733; *Pike v. Bright*, 29 Ala. 332; *Fuller v. Duren*, 36 Ala. 73. If this principle were capable of application to an action for use and occupation, in this case it could not be applied, for there was no reception, for rents and profits, of money, or of that which was treated as the equivalent of money. There was no more than an actual occupancy, a hostile possession, without a letting to another for rent. But the principle is incapable of application otherwise than to a conversion of chattels; it can not be made to support an action for use and occupation of lands.—*Clarance v. Marshall*, 2 Cr. & M. 495; *Churchward v. Ford*, 2 Hurlstone

37

[Hubbard v. Russell.]

& Nor. 446; *Edmondson v. Kite*, 43 Mo. 176. In *Church-ward v. Ford, supra*, it was said by Pollock, C. B., "The taking of possession as of right can not be turned into a contract on the notion that the trespass may be waived, and some imaginary contract substituted." The whole doctrine is fully explained by the Supreme Court of Ohio in *Peters v. Elkins*, 14 Ohio, 346 : "As respects chattels, when the entire thing is converted, the trespass may be waived, and its value recovered under the form of contract. But not so, when the main possession or en-joyment has been wrongfully interrupted or disturbed ; because the doctrine of waiver proceeds upon the principle, that waiv-ing the tort is a parting with the property to the wrong-doer, and the law holds him for its price. Hence, if the waiving of the tort will not invest the wrong-doer with a legal right, there is nothing from which the law can imply an assumpsit, and the remedy must conform to the wrong. It applies only to those things which may pass by delivery, and of which possession is evidence of ownership; and, therefore, it applies not to in-juries to possession of land. To waive a trespass upon land confers no right upon the wrong-doer. Hence, the remedy must follow the nature of the original act. To accept any other theory, would be to destroy that certainty and precision respecting the wrong and the remedy, necessary to work out justice, under the forms of judicial procedure." In no view of the case, as it is presented by the agreed statement of facts, can the action be maintained. The circuit court erred in in-structing the jury that the plaintiffs were entitled to recover, and in the refusal upon request of the converse instruction, that they were not entitled to recover.

Reversed and remanded.