## SCHAEFFER, Respondent, v. MILLER, Appellant.

(No. 2,832.)

(Submitted June 20, 1910. Decided June 27, 1910.)

[109 Pac. 970.]

*Quasi Contracts—"Obligation"—Statute of Limitations.*

Contracts—*"Quasi* Contracts"—Definition.
   1.   Where one has received money which, though not bound to do
   so by express contract, he in equity and good conscience ought to
   turn over to him from whom he received it, the law implies a prom-
   ise on his part to that effect, and the obligation, thus created or
   implied by law, is termed a *"quasi* contract," as distinguished from a
   contract as defined in sections 4965 and 4966, Revised Codes.
Same—Not Founded on Writing—"Obligation"—Statute of Limitations.
   2.   Pending a deal for the purchase of real property, plaintiff paid
   to defendant $5,000 on the purchase price. Before the negotiations
   had ripened into a contract they failed, and defendant returned
   $4,000 of the money paid, but refused to turn over the balance.
   There was not any agreement between them that all the money
   should be returned to the prospective purchaser in case the transfer
   was not made. The action to recover the balance of $1,000 was
   not brought until more than three years had elapsed after payment
   of the money to defendant. *Held,* that the action was one upon
   an "obligation," within the meaning of subdivision 3 of section 6447,
   Revised Codes, which provides that an action upon an obligation,
   not founded upon an instrument in writing other than a contract,
   etc., must be commenced within three years, and hence was barred un-
   der said section.

*Appeal from District Court, Lewis and Clark County; J. M.
Clements, Judge.*

Action by Lincoln H. Schaeffer against Thomas B. Miller.
Judgment for plaintiff, and defendant appeals. Reversed and
remanded, with directions.

*Messrs. Carpenter, Day & Carpenter* submitted a brief in be-
half of Appellant. *Mr. B. P. Carpenter* argued the cause orally.

In behalf of Respondent, there was a brief by *Messrs. Walsh
& Nolan* and *Messrs. Clayberg & Horsky. Mr. T. J. Walsh*
argued the cause orally.

This action is not claimed by respondent to be based on a con-
tract of sale or a failure to carry out its terms, but is purely a

41 Mont.—27

cause of action for money had and received by appellant, belonging in equity and good conscience to respondent, because of a total failure of the consideration upon which it was paid. We are suing upon a new contract which the law implies upon the abandonment of the negotiations for the contract of sale, namely, that whenever one has in his hands money which in equity and good conscience belongs to another, the law implies a promise to pay the same to such other.

This implied contract does not grow out of the negotiations between respondent and the owner of the property through appellant as its agent, but is wholly independent thereof. It makes no difference in law how the money came into the hands of appellant, in so far as the implied promise to repay is concerned, and the court, in determining the liability of appellant to repay, need not consider the means or methods by which appellant received this money. (See *Duncan* v. *Grisborn*, 17 Utah, 209, 53 Pac. 1044; *Pressnell* v. *Lundin*, 44 Minn. 551, 47 N. W. 161; *Richter* v. *Union Land etc. Co.*, 129 Cal. 367, 62 Pac. 39; *Rose* v. *Foord*, 96 Cal. 152, 30 Pac. 1114; *Fuel Co.* v. *Tuck*, 53 Cal. 304; *Phelps* v. *Brown*, 95 Cal. 572, 30 Pac. 774.)

If there is any doubt in the mind of the court as to which section of the statute of limitations is applicable, that of the longer term should be applied. (25 Cyc. 1068; *Crum* v. *Johnson*, 3 Neb. (Unof.) 826, 92 N. W. 1054.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Immediately prior to June 20, 1905, the Mutual Benefit Life Insurance Company of New Jersey owned the Denver Block in the city of Helena. T. B. Miller, this appellant, was a special agent for the insurance company, and, through him, L. H. Schaeffer, the respondent, entered into negotiations for the purchase of the property. These negotiations were apparently proceeding so favorably that Schaeffer paid over to Miller $5,000 as a part of the purchase price on the property; but about June 20 the negotiations failed before a contract had been entered

into, and Schaeffer thereupon demanded the return of his money. Miller repaid him $4,000, but refused to pay the balance, and this action was commenced to recover the $1,000 remaining unpaid. The complaint was filed April 19, 1909. In addition to other defenses, the answer pleaded the bar of the statute of limitations. At the close of the plaintiff's case upon the trial in the district court, the defendant moved for a nonsuit, and specified as one of the grounds of the motion that the cause of action was barred by the provisions of subdivision 3 of section 6447, Revised Codes. This motion was denied. The trial resulted in a verdict and judgment in favor of the plaintiff, from which judgment the defendant appealed.

Upon substantially the same evidence as presented in this record, we held, in *Schaeffer* v. *Mutual Benefit Life Ins. Co.*, 38 Mont. 459, 100 Pac. 225, that Miller did not have any authority, actual or ostensible, to accept the $5,000 pending negotiations for a contract of sale. The present action proceeds upon the theory that, since Miller did actually receive the money which belonged to Schaeffer, and the negotiations failed before any contract of sale was ever entered into, in equity and good conscience, Miller should return the entire amount of $5,000. There is not any dispute as to the character of action or of the right of plaintiff to maintain it if brought within time. The action was brought more than three years and less than five years after the money was paid over to Miller and a demand for its return made by Schaeffer. At common law this would be treated as an action of implied *assumpsit* for money had and received by the defendant to the use and benefit of plaintiff; and while our Code has abolished the forms of action, the principles underlying them are frequently applied in determining the rights and remedies of litigants.

Prior to 1903 our statute of limitations provided that an action upon a contract, obligation, or liability founded upon an instrument in writing must be commenced within eight years (section 512, Code of Civil Procedure of 1895); while an action upon a contract, account, promise, obligation or liability not

founded upon an instrument in writing must be commenced within three years (section 514). By section 513 certain other actions were required to be brought within five years. In 1903 sections 513 and 514 above were amended (Laws of 1903, page 292, Chapter 128), and the amended sections were brought forward into the Revised Codes as sections 6446 and 6447 respectively. Section 6446 provides that an action upon a contract, account, or promise not founded upon an instrument in writing, must be commenced within five years. Section 6447 provides: " * * * 3. An action upon an obligation or liability, not founded upon an instrument in writing other than a contract, account or promise," must be commenced within three years. The only question presented by this appeal is: Which of the above provisions is controlling in this action? If the former, the action was brought in time; if the latter, the action was barred at the time the complaint was filed.

The answer to the question above stated is to be found in the answer to the other question: Is this an action upon a contract, or upon an obligation? Respondent contends that it is an action upon a contract, within the meaning of that word as used in section 6446 above; on the contrary, the appellant contends that it is an action upon an obligation as that word is used in section 6447, and must have been brought within three years, and, as it was not, it is barred. There was not any agreement between Miller and Schaeffer that Miller should return the money if the negotiations failed, or at all. There was not any meeting of minds and not any consideration; therefore there was not any "contract," as that term is generally understood. But Miller received money which in equity and good conscience he ought to turn over to Schaeffer, and upon this fact alone the law implies a promise on his part to do so; and this obligation of his, created or implied by law, is termed by the courts and law-writers a *quasi* contract—a contract implied by law, or a constructive contract. It is a pure legal fiction; it lacks two of the essential elements of a contract, as defined in sections 4965 and 4966 of the Revised Codes, and as generally understood.

In treating of *quasi* contracts or contracts implied by law, as distinguished from contracts implied in fact, the supreme court of Pennsylvania, in *Hertzog* v. *Hertzog*, 29 Pa. 465, a leading case upon the subject, says: "In one case, the contract is mere fiction, a form imposed in order to adapt the case to a given remedy; in the other, it is a fact legitimately inferred. In one, the intention is disregarded; in the other, it is ascertained and enforced. In one, the duty defines the contract; in the other, the contract defines the duty. We have, therefore, in law three classes of relations called contracts: (1) Constructive contracts, which are fictions of law adapted to enforce legal duties by actions of contract, where no proper contract exists, express or implied. (2) Implied contracts, which arise under circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intention to contract. (3) Express contracts."

In *Sceva* v. *True*, 53 N. H. 627, it is said: "Illustrations might be multiplied, but enough has been said to show that when a contract or promise implied by law is spoken of, a very different thing is meant from a contract in fact, whether express or tacit. The evidence of an *actual* contract is generally to be found either in some writing made by the parties, or in verbal communications which passed between them, or in their acts and conduct considered in the light of the circumstances of each particular case. A contract implied by law, on the contrary, rests upon no evidence. It has no actual existence; it is simply a mythical creation of the law. The law says it shall be taken that there was a promise, when, in point of fact, there was none. Of course this is not good logic, for the obvious and sufficient reason that it is not true. It is a legal fiction, resting wholly for its support on a plain legal obligation, and a plain legal right. If it were true, it would not be a fiction. There is a class of legal rights, with their correlative legal duties, analogous to the *obligationes quasi ex contractu* of the civil law, which seem to lie in the region between contracts on the one hand, and torts on the other, and to call for the application of

a remedy not strictly furnished either by actions *ex contractu,* or actions *ex delicto.* The common law supplies no action of duty, as it does of *assumpsit* and trespass; and hence the somewhat awkward contrivance of this fiction to apply the remedy of *assumpsit* where there is no true contract, and no promise to support it."

Emphasis is laid by respondent upon the fact that at common law the action of *assumpsit* was employed to enforce redress for the breach of a *quasi* contract, and at first blush this might appear to be a reason of some cogency for asserting that the subject matter of such action must be a contract; but the fact is that the classification of civil actions under the common law, as those arising from (1) torts, and (2) contracts, was not sufficiently comprehensive to include an action arising from the mere breach of duty, such as is presented by the case before us, and, to prevent a failure of justice, the courts at common law accommodated this right of action to the form of action called "*assumpsit,*" by creating the legal fiction of a promise where there was not any in fact. The right of action for a breach of duty had for its foundation the maxim "*Ex aequo et bono,*" and because the common-law counts partook of the nature of equitable remedies, they were deemed most appropriate to this right of action, not because it was founded upon a contract, but because it was of an equitable nature; and this mythical creation of the law, called a *quasi* contract, was adopted for the purpose of enforcing a legal duty by an action in form *ex contractu* (15 Am. & Eng. Ency. of Law, 2d ed., 1078; *Hertzog* v. *Hertzog,* above), but in reality in the nature of a bill in equity (15 Am. & Eng. Ency. of Law, 2d ed., 1098). At common law, substantive law was largely an appendix or supplement to the law of procedure; and it was for the very purpose of making applicable the form of action in *assumpsit* that the common law created this fiction of a promise. (2 Page on Contracts, sec. 771.)

Speaking of *quasi* contracts in 9 Cyc. 243, it is said: "These obligations, however, are not contract obligations at all in the

true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy. They are described by the term *'quasi'* or *'constructive'* contracts.''

In *Moses* v. *Macferlan,* 2 Burr. 1005, which was an action *in indebitatus assumpsit* upon the common count for money had and received upon a *quasi* contract, Lord Mansfield, speaking for the court in approval of the form of action adopted, said: ''This kind of equitable action to recover back money which ought not in justice to be kept is very beneficial, and therefore much encouraged. It lies only for money which *ex aequo et bono* the defendant ought to refund.''

Of the application of the common counts to an action upon a *quasi* contract, the supreme court of Alabama, in *Barnett* v. *Warren & Co.,* 82 Ala. 557, 2 South. 457, remarks: ''A suit for money had and received is in the nature of an equitable action, and is maintainable whenever one person has money which, *ex aequo et bono,* belongs to another (3 Brickell's Digest, 51, secs. 10, 11, 13) ; and it is not always necessary that actual money shall have been received. If the property, or anything else, be received as the equivalent of money, by one who assumes to cancel or dispose of a property right, for which, by contract, or liability, legal or equitable, it is his duty to account to another, the latter may treat the transaction as a receipt of money, and sue for it as such.''

In *Camp* v. *Tompkins,* 9 Conn. 545, the court said: ''This action for money had and received is in [the] nature of a bill in equity, and the gist of the action is, that the party is obliged by the ties of equity and natural justice to refund the money.''

In 2 Greenleaf on Evidence, thirteenth edition, section 117, it is said: ''The count for money had and received, which in its spirit and objects has been likened to a bill in equity, may in general be proved by any legal evidence, showing that the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff.'' This text is quoted with approval in *Davis* v. *Krum,* 12 Mo. App. 279.

So that, after all, the fact that an action *ex contractu* has been utilized for the enforcement of rights growing out of *quasi* contracts is of little significance in attempting to determine whether such an action is in fact upon a contract. There is not any reason for applying the term *"quasi* contract" to the relationship existing between plaintiff and defendant in any of these cases. Had the courts and text-writers described the relationship by the simple term "duty," the profession and litigants would have been saved much confusion and needless annoyance. But the same legislature which adopted section 514, Code of Civil Procedure of 1895, above, also adopted sections 2090 and 2091, and sections 1920 and 1921, Civil Code of 1895 (sections 4965, 4966, 4892, and 4893, Revised Codes). These sections read as follows:

"Sec. 2090. A contract is an agreement to do or not to do a certain thing.

"Sec. 2091. It is essential to the existence of a contract that there should be: 1. Parties capable of contracting. 2. Their consent. 3. A lawful object; and 4. A sufficient cause or consideration."

"Sec. 1920. An obligation is a legal duty, by which a person is bound to do or not to do a certain thing.

"Sec. 1921. An obligation arises either from: 1. The contract of the parties; or, 2. The operation of law. * * * "

These sections are quoted literally from the Field New York Code of 1865. It is only reasonable to presume that the legislature which adopted the Codes of 1895, used the term "contract," in section 514, as defined and analyzed by it in sections 2090 and 2091 above, and likewise used the term "obligation" as defined by it in sections 1920 and 1921 above. If this be true, and it is scarcely open to doubt, then there never was a contract between Miller and Schaeffer for the return of this money, and an action to enforce the return of it is not an action upon a contract as defined in the Codes or as used in the statute of limitations. But the duty to return the money is the very foundation of the action, and the relationship of Miller to

Schaeffer is properly characterized by the term "obligation" or legal duty; and this present action is one to enforce a duty created by law from the very right and justice of Schaeffer's demand, and is an action upon an obligation, not founded upon an instrument in writing, as that term is used in the statute of limitations. Such an action must be brought within three years from the time the cause of action accrues; and, as this action was not brought within the time limited by the statute, the cause of action was barred, and the court erred in refusing to grant the nonsuit. This conclusion does not conflict in the least with the decision of this court in *Galvin* v. *Mac. M. & M. Co.,* 14 Mont. 508, 37 Pac. 366. The right of a litigant in certain cases to waive a tort and sue as in *assumpsit* is recognized by the authorities generally; but, by amending section 514 above, it can hardly have been intended by the legislature that such election of remedies should operate to give the plaintiff two years' additional time within which to assert his right.

The plea of the bar of the statute of limitations is one recognized by law. Statutes of limitations are the creatures of legislation, and are enacted for the express purpose of being utilized, to the end that one may not be harassed by litigation after a reasonable time has elapsed, and proof, which might otherwise have been available, may have been lost. They are essentially statutes of repose. The defense having been interposed in this action, it should have prevailed.

The judgment is reversed, and the cause is remanded to the district court, with direction to set aside the judgment heretofore entered, and enter judgment in favor of the defendant for his costs.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.