# Gulfport Fert. Co. v. Jones.

### Assumpsit.

#### (Decided November 14, 1916.   73 South. 145.)

1. **Mortgages; Perishable Property; Sale; Implied Contract.**—Where the
property covered by the mortgage is perishable, and the mortgagee refuses
consent for the sale of such property, the law will imply a contract by the
mortgagee to purchase at the market price when such goods are tendered
by the mortgagor to be applied on the mortgage debt; it being a misde-
meanor under § 7423, Code 1907, to sell such chattels without the consent
of the mortgagee.

2. **Same.**—Where the mortgagee refuses to allow the mortgagor to sell
perishable mortgaged property, and the mortgagor brings action for breach
of the mortgagee contract implied by law that he shall buy such perishable
articles, his right to recover depends on the principles of equity and justice,
and he must acquit himself of fault or negligence by showing that he gath-
ered the mortgaged articles, put them in marketable condition, and tendered
them to the mortgagee or his authorized agent, or that such tender was
waived.

3. **Set-Off and Counter Claim; Nature.**—The demand of a mortgagor
against his mortgagee for breach of the mortgagee's implied contract to
buy the perishable mortgaged chattels, the mortgagee having refused con-
sent for their sale, is a debt or demand not sounding in damages merely, and
is available as a set-off in an action on the secured debt.

4. **Charge of Court; Applicability to Evidence.**—Where there is evidence
of ratification of an agent's acts, a charge denying right of recovery unless
the agent had authority is properly refused.

5. **Payment; Pleading.**—In order to be available as a defense, payment
must be pleaded.

6. **Charge of Court; Argumentative.**—A charge that if the jury is satis-
fied from the evidence that A. was authorized by B. to sell fertilizer, take
notes for it, and collect the notes, then A. would be authorized to arrange
terms with the maker as to the method of payment, is not only argumenta-
tive but invasive of the province of the jury also.

7. **Usury; Penalty; Interest.**—Where usurious interest is included in
note, the payee had no right to any interest.

[Gulfport Fert. Co. v. Jones.]

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by the Gulfport Fertilizer Company against Burke Jones, Jr. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The suit was upon a promissory note for $159.17, made by defendant and payable to plaintiff, and contained a clause conveying to the Gulfport Fertilizer Company and assigns all live stock and the "entire crop of cotton, corn, and other produce raised by me during the year 1912 on any lands whatever." Defendant filed the following pleas:

(1) Defendant says that at the time said action was commenced plaintiff was indebted to him in the sum of $175, the value of 158 crates of cabbage, which were sold and delivered by plaintiff to defendant at Theodore, in Mobile county, Ala., during the months of April, May, and June, 1912, which he hereby offers to set off against demands of plaintiff. (2) Practically same as 1.

Amended plea 3: As a defense to the action defendant says that during the year 1912 plaintiff attempted to destroy the competition in the sale of cabbages and other garden produce at Theodore, in Mobile county, Ala., wherefore defendant claims of plaintiff $500 as the statutory penalty for so doing, under section 2487, Code 1907; and this defendant further claims of plaintiff the further sum of $175 as the actual damages suffered by this defendant through plaintiff's so attempting to destroy the competition in the sale of cabbages and other garden produce at Theodore, in Mobile county.

Plea 4 is the same as 3, except that it sets out the fact that the note contained a mortgage clause creating a lien on the crop raised by the defendant, and that plaintiff then agreed that it would purchase defendant's crops so raised by him at the market price; but defendant says that when his crop of cabbages ripened he offered to sell them to plaintiff at Theodore at the market price, but that plaintiff refused to buy them, and wrongfully notified all other dealers there that it held a mortgage on defendant's crop.

These pleas also allege that at the time of giving such note plaintiff knew or was informed that defendant was engaged in the business of raising vegetables for the market.

[Gulfport Fert. Co. v. Jones.]

The sixth plea alleges that there was included in said note the sum of $2.80 usurious interest; therefore the note is usurious and void.

The following charges were refused to plaintiff:

(1) The court charges you, gentlemen, that if you are reasonably satisfied from the evidence in the case that J. M. Cook was the agent of the Gulfport Fertilizer Company to sell fertilizer, but that he was not the agent of said company to buy produce for it, then your verdict must be for plaintiff.

(3) Before you can find a verdict for defendant, you must be reasonably satisfied from the evidence that the fertilizer company authorized J. M. Cook to buy the produce mentioned in pleas 1 and 2 for said Gulfport Fertilizer Company.

(6) The court charges you that, if you are reasonably satisfied from the evidence that J. M. Cook and defendant entered into an agreement by which said defendant should deliver to said Cook produce in payment of the note sued on, and that defendant in pursuance of said agreement did deliver such produce to said Cook in an amount sufficient to satisfy said note, your verdict must nevertheless be for plaintiff under the issues in this case.

The following charges are given for defendant:

(4) The court charges the jury that, if they are reasonably satisfied from the evidence that J. M. Cook was authorized by the Gulfport Fertilizer Company to sell fertilizer, and take notes for it, and to collect such notes, then Cook would be authorized to arrange terms with the maker of such note as to the method of paying such note.

(3) If you are reasonably satisfied from the evidence that plaintiff included usurious interest on the note sued on, then plaintiff is not entitled to any interest.

HARRY T. SMITH & CAFFEY, and J. C. ROSS, for appellant. ERVIN & McALEER, for appellee.

BROWN, J.— (1) It is made a misdemeanor by our statute for a mortgagor to sell or convey any personal property upon which he has given a written mortgage lien or deed of trust "which is then unsatisfied in whole or in part, without first obtaining the consent of the lawful holder thereof to such sale or conveyance."—Code 1907, § 7423. And satisfaction of the mortgage subsequent to such illegal sale does not purge the illegal act

of criminal consequences.—*Steed v. Knowles,* 79 Ala. 446. The design of the statute is to protect such securities for the benefit of the holder thereof.—*Fort v. State,* 1 Ala. App. 199, 55 South. 434; *Johnson v. State,* 69 Ala. 593. One of the questions presented by this record is: Can the holder of a chattel mortgage on perishable chattels withhold his consent to sale thereof by the mortgagor, and also refuse to take the chattels at the market price when tendered by the mortgagor to be applied on the mortgage debt, without liability in the event the mortgagor sustains a loss?

By force of the statute making it unlawful for the mortgagor to sell the chattels without the consent of the holder of the mortgage, and the general law vesting in the holder of the mortgage a title, either legal or equitable, according to the circumstances, and visiting upon the purchaser without the holder's consent the liability of a tort-feasor, the holder has absolute command of the situation, and the mortgagor is absolutely helpless, and wholly dependent upon the will of the holder. All that is left for him to do is to tender the property to the holder of the lien, to be applied on the debt. Under such circumstances, it would be extremely unjust to say that the holder of the lien can withhold his consent to a sale, and also refuse to accept the chattel when tendered by the mortgagor to estinguish the mortgage lien, without liability in the event of a loss of the goods without fault or negligence on the part of the mortgagor. In such case, the law will imply a contract on the part of the holder of the security to purchase at the market price, when the chattels are tendered by the mortgagor to be applied on the mortgage debt. In *Hertzog v. Hertzog,* 29 Pa. 465, Mr. Justice Lowrie, speaking for the court, observed: "There is some looseness of thought in supposing that reason and justice ever dictate any contracts between parties, or impose such upon them. All true contracts grow out of the intentions of the parties to transactions, and are dictated only by their mutual and accordant wills. When this intention is expressed, we call the contract an express one. When it is not expressed, it may be inferred, implied, or presumed from circumstances as really existing, and then the contract, thus ascertained, is called an implied one. The instances given by Blackstone are an illustration of this. But it appears in another place (3 Conn. 159-166) that Blackstone introduces this thought about reason and justice dictating contracts, in order to embrace,

under his definition of an implied contract, another large class of relations, which involve no intention to contract at all, though they may be treated as if they did. Thus, whenever, not our variant notions of reason and justice, but the common sense and common justice of the country, and therefore the common law or statute law, imposes upon any one a duty, irrespective of contract, and allow it to be enforced by a contract remedy, he calls this a case of implied contract. Thus out of torts grows the duty of compensation, and in many cases the tort may be waived, and the action brought in assumpsit."

Quoting from 2 R. C. L. 749, § 8: "After subtracting express contracts and those implied in fact, there is still left another class of obligations, to enforce which the action of general assumpsit is a well-established remedy. The principle upon which this latter class of obligation rests is equitable in its nature, and was, like most other equitable principles, derived from the civil law. This obligation was under the civil law designated quasi contractus. Stated as a civil-law principle, it was an obligation similar in character to that of contract, but which arose, not from agreement of parties, but from some relation between them, or from a voluntary act of one of them, or, stated in other language, an obligation springing from voluntary and lawful acts of parties in the absence of an agreement. In quasi contracts the obligation arises, not from consent, as in case of contract, but from the law of natural equity. * * * The liability exists from an implication of law that arises from the facts and circumstances, independent of agreement or presumed intention. In this class of cases the notion of a contract is purely fictitious. * * * As has been well said, in the case of contracts the agreement defines the duty, while in the latter class of cases the duty defines the contract."

This test is supported by *Board of Highway Commissioners v. Bloomington,* 253 Ill. 164, 97 N. E. 280, Ann. Cas. 1913A, 471; *Schaeffer v. Miller,* 41 Mont. 417, 109 Pac. 970, 137 Am. St. Rep. 746; *Wood v. Ayres,* 36 Mich. 345, 33 Am. Rep. 396. And the principle is recognized by our own cases.—*Westmoreland v. Davis,* 1 Ala. 299; *Ex parte Northington,* 37 Ala. 496, 79 Am. Dec. 67; *Borum v. Bell,* 132 Ala. 85, 31 South. 454; *Judson v. Eslava,* Minor, 71, 12 Am. Dec. 32; *Bank of Mobile v. Williams,* 13 Ala. 544; *Moore v. Appleton,* 26 Ala. 633; *Thompson v. Merriman,* 15 Ala. 166; *Harper v. Claxton,* 62 Ala. 46; *Levinshon v.*

*Edwards,* 79 Ala. 293; *Rushton v. Davis,* 127 Ala. 288, 28 South. 476; *Fuller v. Duren,* 36 Ala. 73, 76 Am. Dec. 317. Lord Mansfield, in delivering the opinion of the Court of King's Bench in *Moses v. Macferlan,* 2 Bow. (Eng.) 1005, recognizes the principle in this statement: "If the defendant be under obligation from the ties of natural justice to refund, the law implies a debt and gives this action (assumpsit) founded on the equity of the plaintiff's case as if it were upon a contract (quasi ex contractus, as the Roman law expresses it)."

(2) The defendant's right depending upon principles of equity and justice, he must acquit himself of fault or negligence; and, in order to do this, it is incumbent upon him to show that he gathered the cabbages, and put them in marketable condition, and tendered them to the mortgagee or its duly authorized agent, or that such tender was waived.—*Smith v. Anders,* 21 Ala. 782; *Root v. Johnson,* 99 Ala. 90, 10 South. 293.

(3) The demand is such as is susceptible of accurate ascertainment when all the facts are known, and constitutes a debt or demand not sounding in damages merely, and was available to the defendant as a set-off.—*Middleton v. Foshee,* 192 Ala. 265, 68 South. 890. The defendant's pleas 3 and 4, when measured by these principles, were subject to the objection pointed out by the demurrer filed April 17th, that it was not made to appear that plaintiff was liable in any way for the refusal of Cook to buy defendant's produce, and the court erred in overruling the demurrer.

(4) There was some evidence tending to show that Cook turned over to the plaintiff the proceeds of produce delivered by the defendant to Cook, and on the tendencies of the evidence, although Cook had no express authority to purchase produce from defendant, if he did so, and his acts were ratified by the plaintiff, or its authorized agent, in accepting the produce, or its proceeds, this would be a ratification of his acts. Refused charges 1, 3, and 6 ignore this feature of the case as presented by the evidence, and were properly refused.

There was evidence tending to sustain defendant's pleas. This justified the refusal of charges 2 and 4.

(5) One who seeks to show that a debt, the existence of which is admitted or shown, has been discharged by payment, must plead payment.—*Pollak v. Winter,* 166 Ala. 255, 51 South. 998, 52 South. 829, 53 South. 339, 139 Am. St. Rep. 33. Pay-

ment not being pleaded, this was not an issue in the case, and charge 2 should have been refused.

(6) Charge 4 was an argument, and was also invasive of the province of the jury, and the court erred in giving it.

(7) On the evidence, it was a question for the jury as to whether usurious interest was included in the note, and charge 3 asserts a correct proposition of law as applied to this evidence.

As the case was tried on false issues, we deem it unnecessary to review the rulings on the admission and rejection of evidence, as these questions will not probably arise on another trial. We deem it sufficient to say that evidence bearing upon the relation between Cook and the plaintiff, the existence and scope of his authority, whether positive or circumstantial, should be received.

For the errors pointed out, let the judgment be reversed, and the cause remanded.

Reversed and remanded.