## GALVIN, RESPONDENT, *v.* MAC MINING AND MILLING COMPANY, APPELLANT.

[Submitted November 9, 1893. Decided July 2, 1894.]

PROMISSORY NOTE—*Attorneys' fees.*—Attorneys' fees provided for in a promissory note in case its payment be enforced by an action at law are not recoverable in an action by the maker to compel payment of the amount of the note by one who had assumed and agreed to pay it, and who did pay it after the commencement of such suit.

ASSUMPSIT—*Pleading and proof—Variance.*—A verdict for plaintiff for the value of certain shares of stock alleged to have been sold and delivered to the defendant company is supported by evidence that plaintiff indorsed on the stock certificates an assignment thereof to a third party from whom he was about to obtain a loan upon the stock as security, leaving the same with defendant's secretary; that the loan was not consummated, and plaintiff, upon demanding the certificates, was told by the secretary that he would issue a new certificate in a few days; that, upon again applying, the secretary said, "You have no stock in this company," the defense being based upon the theory that the secretary was justified in withholding the certificates until reassigned by the indorsee or their delivery ordered.

SAME—*Same—Tortious detention of goods.*—A complaint in *assumpsit* upon a contract of sale and purchase in which the reasonable value of the property is sought to be recovered is supported by proof of a tortious assumption, detention, and unwarranted refusal to deliver the property to plaintiff on his demand therefor; but where the action is to recover for money had and received to the plaintiff's use by the wrongful taker, through a sale of the property, the sale and the amount received should be alleged and proved.

*Appeal from First Judicial District, Lewis and Clarke County.*

ACTION to recover the value of stock sold to defendant, and to recover the amount of plaintiff's note which defendant

had assumed and agreed to pay. The cause was tried before HUNT, J. Plaintiff had judgment below. Affirmed.

*McConnell, Clayberg & Gunn,* for Appellant*s*

I. The first question presented for the consideration of the court is, Are the allegations of the complaint, upon which the first cause of action is based, supported by the evidence? In considering this question it is necessary to inquire under what circumstances a party can waive the tort and sue in *assumpsit,* where property has been converted. We submit that the great weight of authority in this country and in England is in favor of the rule that a party cannot waive the tort and sue in *assumpsit,* unless the wrongdoer has sold or disposed of the property converted, and received money or money's worth therefor; and that this rule is based upon reason and principle. In support of the proposition just stated, see the following authorities: *Watson* v. *Stever,* 25 Mich. 386; *Moses* v. *Arnold,* 43 Iowa, 187; 22 Am. Rep. 239; *Jones* v. *Hoar,* 5 Pick. 285, and extended note; *Webster* v. *Drinkwater,* 5 Me. 319; 17 Am. Dec. 238, and note; *Tuttle* v. *Campbell,* 74 Mich. 652; 16 Am. St. Rep. 652; *Saville* v. *Welch,* 58 Vt. 683; *Johnston* v. *Salisbury,* 61 Ill. 316; *Stearns* v. *Dillingham,* 22 Vt. 624; 54 Am. Dec. 88; *O'Conley* v. *City of Natchez,* 1 Smedes & M. 31; 40 Am. Dec. 87, and note; *Balch* v. *Patten,* 45 Me. 41; 71 Am. Dec. 526; *Kidney* v. *Persons,* 41 Vt. 386; 98 Am. Dec. 595; *Randolph Iron Co.* v. *Elliott,* 34 N. J. L. 184; *Hutton* v. *Wetherald,* 5 Harr. (Del.) 38; *Pike* v. *Bright,* 29 Ala. 332; *Bartlett* v. *Tucker,* 104 Mass. 336; 6 Am. Rep. 240; *Fuller* v. *Duren,* 36 Ala. 73; 76 Am. Dec. 318; *Gilmore* v. *Wilbur,* 12 Pick. 120; 22 Am. Dec. 410; *Creel* v. *Kirkham,* 47 Ill. 344; *Budd* v. *Hiler,* 27 N. J. L. 43; *Smith* v. *Hatch,* 46 N. H. 146; *Pearsoll* v. *Chapin,* 44 Pa. St. 9; *Guthrie* v. *Wickliffe,* 1 A. K. Marsh. 83; *Sanders* v. *Hamilton,* 3 Dana, 552; *Lawson's Exrs.* v. *Lawson,* 16 Gratt. 230; 80 Am. Dec. 702; *Willet* v. *Willet,* 3 Watts, 277; *Osborne* v. *Bell,* 5 Denio, 370; 49 Am. Dec. 275; *Barlow* v. *Stalworth,* 27 Ga. 517; *Tucker* v. *Jewett,* 32 Conn. 563; *Elliott* v. *Jackson,* 3 Wis. 649; *Chamblee* v. *McKenzie,* 31 Ark. 155; *Jones* v. *Baird,* 7 Jones, 152; Bishop on Contracts, 186, and cases cited;

Chitty on Contracts, 905–06.) There are cases which hold that the tort may be waived and *assumpsit* maintained whenever the property has been converted either into money or into any other beneficial use by the wrongdoer, and especially where it has been so applied to his use as to lose its identity. (*Evans* v. *Miller*, 58 Miss. 120; 38 Am. Rep. 313; Cooley on Torts, 95; 2 Greenleaf on Evidence, § 108.) We have been unable, after an extended investigation of the subject, to find a single case where the facts are analagous to those of the case at bar, in which the court has held that the tort may be waived, and an action of *assumpsit* maintained. In some of the decisions general expressions may be found which, if taken without reference to the particular case in which they are used, would be in conflict with the rule established by the cases just cited. And there is a class of cases in which a party is allowed to waive the tort and sue in *assumpsit*, even though the property has not been disposed of or used by the wrongdoer. The class we are now referring to are those cases in which the wrongdoer has died, and the action of *assumpsit* is maintained against his executor. It is admitted that the action of *assumpsit* cannot be sustained on principle even in these cases; but it is allowed to be done for the reason that the action for the conversion is extinguished by the death of the wrongdoer, and the injured party would be without a remedy, unless he could maintain an action of *assumpsit* against the executor or administrator. Of course, where the wrongdoer has disposed of the property, a waiver of the conversion extinguishes all the elements of a tort, and ratifies the act of the wrongdoer in disposing of the property, and really makes him the agent of the party injured. In such a case, both upon reason and principle, the action of *assumpsit* can be maintained; but where the wrongdoer retains the property in its original form, and has neither disposed of it, nor used it, or received any benefit from it, the circumstances repel all implication of a promise in fact; and in order to maintain an action of *assumpsit*, it is necessary to overlook and ignore certain fundamental principles of the common law. If law is a science, and is to be treated by the courts as such, then the rule established by the cases which we have cited must be adhered to and followed.

II.  But admitting for the present that the case is a proper one for the waiver of the tort, there is a fatal variance between the allegations of the complaint and the proof, or, more properly speaking, there is a total failure of proof.  The complaint states a cause of action for stock sold and delivered, whereas evidence was introduced for the purpose of showing a conversion of the stock in question.  "The complaint must contain a statement of the facts constituting the cause of action in ordinary and concise language."  (Code Civ. Proc., § 85.) "The code system is essentially a fact system intended to require the parties in judicial proceedings to state the particulars of their respective claims, and advise the opposite party of the true nature and object of the suit."  (Maxwell on Code Pleading, § 105; Bliss on Code Pleading, § 245 a; Pomeroy's Remedies and Remedial Rights, §§ 517, 554.)  When the action is upon an implied contract it is not proper to allege the promise, but the facts must be stated from which the promise is implied by law.  (*Higgins* v. *Germaine*, 1 Mont. 230; Pomeroy's Remedies and Remedial Rights, §§ 537–40; Bliss on Code Pleading, § 245 a; Pomeroy's Remedies and Remedial Rights, §§ 572, 573.)  Where a party pleads a contract and introduces evidence of a tort there is a fatal variance between the allegations and the proof.  (*Distler* v. *Dabney*, 3 Wash. 200; Pomeroy's Remedies and Remedial Rights, 610.)

*C. B. Nolan*, and *T. J. Walsh*, for Respondent.

I.  The plaintiff declared substantially on the common count for goods, wares, and merchandise sold, as his first cause of action, and the proof showed a conversion by the defendant of plaintiff's shares of stock represented by two certificates of the value, as the jury found, of eighteen hundred and sixty-nine dollars and fifty cents.  The action as to that claim was brought upon the theory that the plaintiff had the right to waive the tort and sue as in *assumpsit*, though the proof showed no sale or other disposition of the stock by the defendant.  Although some difference of opinion exists among the courts and text-writers, the question seems to have been put past discussion in nearly if not quite every state which has adopted the reformed code of procedure.  This

result may not be a necessity from the adoption of this form of procedure and the manner of pleading it sanctions, but, if not, it is traceable to the original spirit of the code, namely, the giving to a party every remedy within reason, and with only such regard to forms and technical niceties as the due course of legal procedure will admit. The fact is strikingly noticeable in the array of authorities cited in appellant's brief, that, with only a few exceptions, they come from states which have thus far found themselves unable to break away from the ancient system of practice and pleading. The writers on the code agree that the action is properly brought, though the property converted has not been sold or otherwise disposed of. Bliss is authority in New York and the states whose system is modeled upon the code, and Pomeroy is equally and deservedly regarded as the standard in California and those states which follow its lead, and they both agree upon this point and in favor of the contention of the plaintiff. (Bliss on Code Pleading, 13; Pomeroy on Remedies and Remedial Rights, 567–69; Wade on Attachment, 22.) Without attempting to exhaust the list, but rather to give representative cases from different jurisdictions, the following are submitted as instances "where the facts are analogous to those of the case at bar," so far as the principle under discussion is concerned: *Putnam* v. *Wise*, 1 Hill, 234; 37 Am. Dec. 309, and note; *Walker* v. *Duncan*, 68 Wis. 624; *Norden* v. *Jones*, 33 Wis. 600; 14 Am. Rep. 782; *Hagaman* v. *Neitzel*, 15 Kan. 383; *Fratt* v. *Clark*, 12 Cal. 89; *Halleck* v. *Mixer*, 16 Cal. 574; *Alsbrook* v. *Hathaway*, 3 Sneed, 454; *Gordon* v. *Bruner*, 49 Mo. 570; *Kirkman* v. *Phillips*, 7 Heisk. 222; *Cooper* v. *Helsabeck*, 5 Blackf. 14; *Hill* v. *Davis*, 3 N. H. 384.) Many of the authorities cited by counsel do, in fact, support his contention; but it will be observed that no small number merely assert that when the property has been sold *assumpsit* will lie, without attempting to decide that it will not otherwise. A New Hampshire case is cited which will be found not to maintain the position of appellant. A long line of decisions in that state, following *Hill* v. *Davis*, 3 N. H. 384, establish the rule in that state in favor of the contention of respondent. So likewise the *dictum* in *Elliott* v. *Jackson*, 3 Wis. 649, does not declare the law of the state of

Wisconsin, the contrary having been repeatedly affirmed by the highest court of that state. But even in those states where the right to waive the tort and sue upon contract is restricted generally, it is admitted in cases in which the property came rightfully into the hands of the tort feasor originally by virtue of some contract or fiduciary relation, and he afterwards refused to surrender it to the rightful owner. (*Tuttle* v. *Campbell,* 74 Mich. 652; 16 Am. St. Rep. 652; *Aldine Mfg. Co.* v. *Barnard,* 84 Mich. 632; *McLaughlin* v. *Salley,* 46 Mich. 219.) So that whatever view the court takes of the question generally, it is not presented for determination here, since even in those jurisdictions which declare the general rule as contended for by appellant, the right to maintain the present action is asserted. And this is equally true for another reason. Whatever rule may be laid down as to the conversion of property generally, it is settled that *assumpsit* or *indebitatus assumpsit* at common law lies against a corporation for unjustly refusing to register a transfer, or for refusing to issue a certificate to one entitled to it. (Cook on Stockholders, 574; *Wyman* v. *American Powder Co.,* 8 Cush. 168; *Arnold* v. *Suffolk Bank,* 27 Barb. 424; *Kortright* v. *Buffalo Com. Bank,* 20 Wend. 91.)

II. It is asserted, however, with apparent earnestness, that, conceding the law to be as respondent contends, he cannot avail himself of it, because he has chosen to declare on the common count instead of setting forth the facts and then expressly averring a waiver of the tort. The discussion of this question as an abstract proposition by both Mr. Pomeroy and Mr. Bliss leave it involved in more or less doubt. The application of a simple principle of pleading ingrafted in all its vigor from the common law upon the code system ought to settle it, namely, that things are to be pleaded according to their legal effect. The principle, admitting its existence, as must be done for the purpose of this discussion, is that the owner is at liberty to treat the transaction as a sale, which he does by bringing his action on the contract and so alleging, and that the law implies a promise on the part of the tort feasor to pay for the property converted. If this is the legal effect of the defendant's acts, why should the pleading be otherwise than of the common count? And there is direct

authority for so pleading under both systems. (See the Michigan cases above cited, and *Walker* v. *Duncan*, 68 Wis. 624.) Upon matters of pleading under the code there is no court in the union ranks higher, either for the logic of its conclusions or the consistency of its decisions, than the supreme court of Wisconsin, and the appellant cites no authority in conflict with it. But this is not an important question. Whatever the court may think of it as an abstract proposition, this case will not be reversed because the pleader set out what the authorities he relies upon declare to be the legal conclusions from the facts, instead of setting forth those evidentiary facts. If the court should so hold it should now permit an amendment to be made or the variance should be disregarded. (*Pratt* v. *Hudson River R. R. Co.*, 21 N. Y. 307.) It is entirely evident from the record that no prejudice resulted from the style of pleading chosen by respondent. The appellant was perfectly conversant with the character of the evidence to be produced, was prepared to meet it, and did not undertake to assert, on the motion for a nonsuit, that it was at all surprised thereby.

Per CURIAM.—In this action plaintiff alleges sale and delivery by him, and purchase by defendant, of seven thousand four hundred and sixty-eight shares of the capital stock of the defendant company, of the reasonable value of two thousand three hundred and forty dollars and forty cents, but that defendant has failed to make payment therefor; wherefore judgment is demanded for recovery of that sum. And for a second cause of action plaintiff alleges a transaction whereby he claims defendant became indebted to him in the sum of one thousand two hundred and twenty-six dollars, with certain interest thereon, by reason of defendant having assumed and agreed to pay plaintiff's promissory note for that amount, which he and another had executed and delivered to Henry Klein. It appears this note provided for attorney fees, to be recovered, in case its payment was enforced by action at law, by the legal holder thereof; and, in addition to the demand for twelve hundred and twenty-six dollars and interest, plaintiff demands an attorney's fee of sixty dollars, presumably (but not expressly by allegation) predicating such demand

upon a condition in said note that, if payment thereof was enforced by an action at law, reasonable attorney fees for prosecuting such action should be recovered also.

As to this second cause of action it is admitted that defendant, before filing its answer, had fulfilled its obligation to pay the principal and interest of said note, but in its answer denies liability for any attorney fee for prosecuting plaintiff's action to compel it to pay said note. The question concerning this attorney fee is therefore the only point, respecting the second cause of action, involved in this appeal. As to this attorney fee it is plain that the defendant company is not liable therefor. It was not directly a party to said note, but in the arrangement between plaintiff and defendant the latter agreed to pay the note, and, not having paid the whole thereof when this action was brought, plaintiff assumed that he could, by this action, compel defendant to pay him the amount of said note, together with reasonable attorney fees for prosecuting his action to enforce such payment. Before the action came to trial, however, and before answer, defendant paid the amount of said note to the holder thereof. It is not shown that defendant had agreed to pay attorney fees for prosecuting an action at law to compel it to pay said note, and we are, without hesitation, of opinion that defendant is not liable for such demand. (*Lang* v. *Cadwell*, 13 Mont. 458.)

As to the first cause of action, for the recovery of the reasonable value of said stock, it appears that plaintiff relied upon the fact that defendant had tortiously assumed, held, and converted said stock to his own use, and therefore plaintiff alleges purchase thereof by defendant, on the theory that he could waive the tort, and sue as upon contract for purchase. Defendant specifically denied every allegation of plaintiff's complaint relating to the sale and purchase of said stock. It was developed on the trial that said stock had been placed in the custody of defendant's secretary, with an assignment indorsed thereon, transferring the same to A. McLain, under the condition that the same, with other stock, might be purchased by the latter on or before a certain date fixed, on payment of a certain sum per share. That, such arrangement having expired, or been entirely revoked, leaving plaintiff's stock in the pos-

session of the secretary of said company, subject to plaintiff's
withdrawal or control, the plaintiff went to the secretary of
defendant, and obtained his shares of stock, and indorsed
thereon an assignment thereof to D. Galvin, and left the same
in the hands of said secretary, explaining to him that plaintiff
was about to borrow a sum of money from D. Galvin, and
proposed to assign and place said stock as security for such
loan.   That he expected D. Galvin to arrive on a train, and
consummate the loan and delivery of the security, and, in
order to facilitate the transaction, as D. Galvin would have but
a few moments to devote thereto, plaintiff had made this
indorsement of assignment in advance of consummating such
loan.   That, as appears to be conceded, the loan in question
was not consummated at all, and thereafter plaintiff called
upon the secretary of defendant, and sought to obtain posses-
sion of his shares of stock, but defendant's secretary, as appears,
did not deliver the same, saying there would be some new
blank certificates of stock in possession of the company in a
few days, and that when the same arrived he would issue
plaintiff a new, clean certificate, representing his shares, in
lieu of the old ones which had been indorsed by the assign-
ments above mentioned.   Being agreeable to that suggestion,
it appears plaintiff left his stock in the custody of the secretary
for some time; and, as appears from the testimony of plaintiff,
in the mean time said secretary personally sought to purchase
said stock from plaintiff, but such purchase was not effected.
That after said certificates of stock had remained in possession
of said secretary for some time, plaintiff demanded the delivery
thereof to him, but the secretary refused to deliver the same
to plaintiff, saying, " You have no stock in this company."
On this state of facts plaintiff based his right to recover from
defendant the reasonable value of said stock; and defendant
appears to have undertaken to defend and justify the action of
its secretary on the ground that, the plaintiff having made said
indorsements on the certificates in contemplation of transfer-
ring them to D. Galvin as security for a loan, the secretary
was justified in withholding said certificates of stock from
plaintiff until D. Galvin reassigned them, or ordered their
delivery to plaintiff.   On this theory of defense the action was

tried, and instructions were given to the jury, and the jury found against defendant, in effect finding that its attempted defense or justification of its secretary's action was not well founded. Considering the theory of defense, and the evidence introduced in the action, we think the verdict of the jury is well supported.

Certain instructions of the court to the jury are complained of as being inconsistent. On the theory of the defense interposed by defendant, and on the facts shown, these instructions are entirely correct, and are favorable to defendant. Nor do we think the point that certain instructions are inconsistent is well taken. They merely set forth alternative views which might be adopted in the case, according to the conclusion which the jury reached from the testimony, and properly leave the jury in an attitude to adopt one or the other of such conclusions from the evidence.

The point is raised by appellant that there is a fatal variance between the proof and the allegations of the complaint, because the complaint alleges a sale of personal property described, and seeks to recover the reasonable value thereof but the proof shows a tortious taking and conversion. The complaint is in the nature of *assumpsit* upon contract of sale and purchase, but the proof discloses a tortious assumption, detention, and unwarranted refusal to deliver said stock to plaintiff on his demand therefor; and these facts, together with the implication which the law draws therefrom, are relied upon to support the complaint alleging a sale. No variance can be maintained on such a situation. The authorities at common law, and also those relating to code procedure and remedies, hold that a declaration in *assumpsit* is supported by proof of the wrongful taking and conversion of personal property; but there is a line of cases which confines the right of election to waive the tort, and sue and recover the value of the goods converted, as if sold to the wrongful taker, to cases where the latter had himself disposed of the property. This distinction has received very careful consideration and extended discussion by courts of last resort, and we think the great weight of reason and authority, especially of decisions under the reformed procedure, disregard

that distinction as immaterial in cases where the owner of the goods sues to recover the reasonable value thereof, on the very proper and rightful assumption that the taker proposed not to take the same without compensation to the owner, but to pay him the reasonable value thereof.  If, however, the action was not for the reasonable value alone, but to recover for money had and received to the use of the owner by the wrongful taker through the sale of the goods, the plaintiff ought certainly to allege and prove the sale and amount received, because that shifts the measure for accounting from that of the reasonable value to the proceeds actually received by the wrongful taker through the sale of the goods.  (Bliss on Code Pleadings, 2d ed., §§ 13, 153; Pomeroy's Remedies and Remedial Rights, §§ 567–73, and cases cited.)

It is also urged by appellant that the evidence is insufficient to support the verdict, because there is no evidence showing a sale by defendant of the property converted.  This not being an action for money had and received by defendant through the sale of goods wrongfully taken from plaintiff, and it not being necessary to allege a sale, the point that the verdict is not supported because of want of proof of sale is not available in this action, for the reasons just shown.

It was urged in the closing argument on behalf of appellant (but not made a point in the brief of its counsel) that defendant could not be held liable for the conduct of its secretary in the matters herein involved, on the ground that the secretary had no authority to involve the company in the implied purchase of said stock; that such acts were not within the realm of his duties as such secretary, or within the scope of his authority as such officer.  This seems to the court to be an important question in view of the evident relation and duties of a secretary to a corporation; and very likely such a defense would have been decisive of this case, so far as the defendant company was concerned, had it been interposed. But plainly no such defense was interposed at all in this action, and the argument of such a proposition on this appeal is entirely inconsistent with the defense interposed as disclosed by the record.  Therefore, inasmuch as defendant appears to have undertaken to espouse the conduct of its secretary,

and justify his action in this respect, although it may have been outside of his authority or duty in his relations with defendant, still, if defendant wished to adopt and defend his conduct complained of in this action, and rest its defense solely upon that ground throughout the trial, and in presenting the motion for new trial, and in presenting the case on this appeal, in the brief and argument of its counsel, until the closing, we see no reason why the defendant should not be allowed to adopt its secretary's action as its own, and as within the scope of his authority, and the liability which follows.

It is proper to further remark that it is exceedingly doubtful that a corporation, without special authorization, can become purchaser of its own stock, which has been sold and outstanding in the hands of individual stockholders. It may, however, commit damage by wrongfully preventing a stockholder from having the use and benefit of his stock. But, as before remarked, the corporation in this case appears, as far as can be ascertained from the record, not to have relied upon such grounds of defense. We may, therefore, very properly presume, for the purposes of this action, that all concerned in the corporation—officers and stockholders—concurred in adopting the conversion of said stock by its secretary as their own act. If that be the case, it includes all who have any rights involved. A principal may adopt as his own the unauthorized act or transaction of an agent; and, having taken that position in defense of a suit, he could not afterwards, on appeal, be heard to deny the agent's authority.

The foregoing remarks upon this view of the case are made in order that this case may in no manner be regarded as affirming that an incorporated company may be held liable under such circumstances, if the proper defense were presented, repudiating the transaction, as well as the authority of its officer to bind it therein.

Ordered that judgment be modified, by disallowing recovery of attorney's fee on the second cause of action; otherwise judgment affirmed.

*Modified.*

All concur.