IVEY, RESPONDENT, *v.* LA FRANCE COPPER CO. ET AL., APPELLANTS.

(No. 3,074.)

(Submitted February 13, 1912.   Decided February 21, 1912.)

[121 Pac. 1061.]

*Actions—Tort   or   Contract—Waiver   of   Tort—Appeal   and   Error—Technical Errors.*

Appeal and Error—Presentation Below—Pleading.
   1.   Defendant cannot claim for the first time on appeal that plaintiff's causes of action were not separately stated.

Action—Tort or Contract—Waiver of Tort.
   2.   One whose ore was wrongfully converted by another could waive the tort and sue upon an implied contract to pay for the ore taken.

Appeal and Error—Technical Errors.
   3.   Where a cause was tried on the merits, the supreme court will not too closely scrutinize the complaint to determine whether it improperly joined causes of action in tort and contract, in view of Revised Codes, section 6593, requiring the trial court to disregard defects in pleadings not affecting substantial rights, and prohibiting reversals by reason of such defects.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by James Ivey against the La France Copper Company and others. From a judgment for plaintiff and an order denying a motion for a new trial, defendants appeal. Affirmed.

*Messrs. Gunn & Hall,* for Appellants, submitted a brief; *Mr. W. W. Patterson* argued the cause orally.

*Mr. C. M. Parr* submitted a brief in behalf of Respondent.

MR. JUSTICE SMITH delivered the opinion of the court.

In his original complaint, the plaintiff attempted to state three separate causes of action, the first of which alleged that on or about the nineteenth day of June, 1908, he entered into an agreement with the defendants, whereby they leased and let to him a certain piece of ground under and within the Lexington quartz lode mining claim, upon the following terms: He was to clean out an old drift, retimber the same, extend it twenty-five feet or more, if necessary, and cut an upraise to a point where ore would be encountered. After striking ore, he was to have all he could take out for the succeeding thirty days. It was further agreed "that at the termination of thirty days after plaintiff had cut the ore, if defendants desired to discontinue the lease they could do so by paying him day's wages for the work already performed by him." He alleged that he began work on the nineteenth day of June, 1908, cleaned out and retimbered the drift, and, after running an upraise for about fifteen feet, cut the lead on August 7, 1908, and encountered ore; up to the thirteenth day of August, 1908, he knocked down forty tons of ore, whereupon the defendants, without cause, ousted him from the premises, refused to allow him to go on with the work, and "kept and shipped all the ore, and refused to settle with him for the same." He demanded general damages in the sum of $1,000 for breach of the agreement of the lease. The second cause of action was based upon the allegation "that, by reason of the acts of the defendants

in ousting and ejecting plaintiff, they have reaped the benefit of plaintiff's work in cleaning out the drift and retimbering the same, extending the drift and cutting the upraise, and the work and labor in prosecuting said work is reasonably worth the sum of $448.'' By the third cause of action, he sought to recover the sum of $468, ''by reason of the wrongful retention by defendants of said forty tons of ore and their refusal to pay plaintiff therefor under the terms and agreement of said lease.'' The answer was in effect a general denial.

At the trial, before the court sitting with a jury, the plaintiff testified that Mr. Frank, who was in charge of the mine for the defendants, told him orally that if he would do the work, as above indicated, he could have the ore, after striking the same, for thirty days without royalty. He said: ''Mr. Frank told me, 'Now, if you strike that ore, we will give you, after doing this work, thirty days clear of royalty for doing this work.' I was never allowed to take that ore out there. I never got any of the benefits of that ore. Any point I struck ore, I had thirty days to take it out.'' After testifying, in effect, that Mr. Frank ordered him out of the mine, and that he had performed all the dead work mentioned in the contract, he continued: ''The work and labor we performed in cleaning out the drift, retimbering the same, extending the drift and cutting the upraise, was reasonably worth $448. I went to Mr. Frank once and asked him, 'What are you going to do about it?' and he said, 'Nothing.' I said that I had forty or forty-five tons of ore there, and, 'What are you going to do about it?' and he said, 'What is your costs for doing the work?' and I told him $448. 'Well,' he said, 'I'll pay you wages for that work done, and I want to keep that ore,' and I said: 'No, you don't keep that ore.' The arrangement we had there was that he was to pay me day's wages, provided my lease was canceled after thirty days; and I told him the wages was $448.'' In cross-examination of the plaintiff, the defendants produced a check for $120.91, the net value of the ore retained by them; but Ivey declared that the check had not been tendered to him.

When plaintiff rested his case, the defendants moved for a nonsuit. Thereupon plaintiff asked and was granted leave to file

an amended complaint, over the following objection of the de-fendants, *viz.:* "We object to that, for the reason that they have made out their case and introduced their testimony upon each cause of action, and at this time it is improper to attempt to amend the complaint by consolidating the causes of action. We object to the filing of the amended complaint, on the ground that it changes the issues raised in the second and third causes of action set out in the original complaint; also on the ground that it changes the nature of said second and third causes of action." The amended complaint set forth the whole transaction in one cause of action. Plaintiff was again called, and testified that Frank told him that if he (Frank) stopped the work before he (Ivey) could ship any ore he would pay for all labor performed. The court then overruled the motion for a nonsuit. The record then goes on to recite: "The foregoing contains all the testimony and proceedings necessary or material to the consideration of the questions raised by the exceptions therein saved. Thereupon the defendants introduced testimony, and after the settlement of the instructions, the case was argued to the jury by respective coun-sel, and the jury returned a verdict in favor of the plaintiff and against the defendants for the sum of $555.91." Defendants appeal from a judgment on the verdict and from an order refus-ing to grant a new trial.

1. It is contended that the so-called lease, not being in writing, was void under the statute of frauds. This position is taken on the authority of *Clark* v. *Wall,* 32 Mont. 219, 79 Pac. 1052, and the point seems to be conceded by counsel for the respondent. But it is not necessary to determine whether or not the facts in this case bring it within the rule laid down in *Clark* v. *Wall.* After experiencing some difficulty in establishing a cause of action, other than that relating to the forty tons of ore, the plain-tiff practically abandoned the cause of action for breach of the so-called lease agreement in itself by testifying that Mr. Frank reserved the right to terminate the agreement by paying day's wages for the dead work. The court is presumed to have cor-rectly charged the jury that plaintiff could not recover for failure of the defendants to allow him to continue the work of getting

out ore. This leaves for our consideration but two items of damages, to-wit, one for failure to pay the amount claimed for doing the dead work, and another for either converting the ore already knocked down, or failing to pay for it, as upon an implied contract. The verdict shows on its face that the jury allowed $120.91 for the ore, the amount proven by the defendants. This leaves $435 for work and labor performed before the ore was encountered. Plaintiff testified that this work was reasonably worth $448. The jury, for some reason, deducted $13 from the amount.

2. It is contended that the amended complaint contains three [1] causes of action which are not separately stated; but this point was not advanced in the court below.

֍ 3. But it is said that the two last causes of action are improperly joined, for the reason that the second claim, or cause of action, is founded in tort, and the third is founded in contract. It was [2] the privilege of the plaintiff, however, to waive the tort and sue upon an implied contract to pay for the ore which confessedly belonged to him. This he evidently attempted to do, and, as the cause has been tried on its merits, we shall not too closely scrutinize [3] his pleading. It was the duty of the court below at every stage of the action to disregard any error or defect in the pleadings or proceedings which did not affect the substantial rights of the parties, and no judgment should be reversed or affected by reason of such error or defect. (Rev. Codes, sec. 6593.) The record is in a very unsatisfactory condition; but we think, in view of the fact that the jury gave credit to the plaintiff's testimony, that substantial justice has been done.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.