Hudson, Respondent, vs. First Trust Company in
Oshkosh, Executor, Appellant.

*November 7—December 3, 1929.*

*Roy E. Reed,* attorney, and *Samuel M. Pedrick,* of counsel, both of Ripon, for the appellant.

For the respondent there was a brief by *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, attorneys, and *Charles Hudson* of Chicago, of counsel, and oral argument by *Mr. Hudson.*

OWEN, J. On the 24th day of March, 1928, Helen Cuykendall was confined to a hospital in Oshkosh by a serious illness, facing an imminent surgical operation. On that day Pauline Lehman, who had lived in the home of Helen Cuykendall for a period of twenty-six years as servant and employee, and between whom there were relations of close intimacy, visited her at the hospital. During this visit Helen Cuykendall took three diamond rings from her fingers, attached a slip of paper to each ring, put them in an envelope, sealed them, and delivered them to Pauline Lehman, telling her that if she (Cuykendall) should die, then to "give these rings to these people that the slip was on," and if she would get better to return them to her. Miss Lehman testified that "I put this envelope containing this ring in my bank box just as she ordered me to, on Saturday, March 24th." The piece of paper attached to one of these rings contained the following note: "Jimmy, to my dear. Jimmy; to be made into a man's ring and to never be worn by anybody but you. (Signed) Ha Ha." "Ha Ha" was a nickname by which she was known among the college boys that boarded at her house. There is no doubt that the "Jimmy" mentioned in this note referred to the plaintiff.

Helen Cuykendall died on March 26th. After her funeral the plaintiff asked Pauline Lehman for the ring. Pauline,

however, hesitated to give him the ring, and, upon advice of counsel, took the envelope containing the three rings from her safety box in the bank and placed it in the safety box which had been used by the deceased in her lifetime. The defendant, First Trust Company in Oshkosh, was duly appointed executor of the last will and testament of Helen Cuykendall, deceased, and as such took charge of this envelope together with other private papers and securities belonging to Helen Cuykendall, deceased, which were found in her safety deposit box. Upon demand of the plaintiff defendant refused to deliver the ring to him. He brought this action to recover possession thereof.

The foregoing facts would seem to respond to all the requirements necessary to constitute a gift *causa mortis,* if the deceased delivered the ring to Pauline Lehman with an intent presently to vest title in the plaintiff upon the condition that if she recovered from her illness she was to be reinvested with the title to the ring. Whether she did so intend, was the only question submitted to the jury. The jury found that Helen Cuykendall delivered the ring to Pauline Lehman as trustee or agent of James S. Hudson "with the intention thereby to pass title as a gift to plaintiff Hudson, subject to the condition that if Helen Cuykendall survived from the illness she then suffered, said ring was to be returned to her." In an opinion rendered upon motions after verdict the trial judge expressly approves of this finding.

The record is by no means barren of evidence to support a contrary conclusion. The natural import of Pauline Lehman's testimony is that the deceased instructed her to deliver the rings to the persons named if she died, and if she should get better to return them to her. This instruction might well be interpreted as inconsistent with an intent then entertained by the deceased to presently pass the title to the donees named on the slips of paper attached to the rings. Miss Lehman was to keep the rings until Miss Cuykendall died. If Miss

Cuykendall recovered, Miss Lehman was to return the rings to her. This is consistent with an intention on the part of Miss Cuykendall to postpone the vesting of title in the donees until after her death, and may be considered inconsistent with that relinquishment of control over the rings necessary to constitute a present gift. However, one's intention with reference to a specific enterprise is to be inferred from all surrounding facts and circumstances. As a rule, such an issue gives rise to a typical jury question. Perhaps the fact that Miss Cuykendall directed Miss Lehman to deposit the rings in Miss Lehman's safety box instead of her own (a fact to which the trial court attached considerable importance) is not without significance. To this extent she placed the rings beyond her control. The weight to be accorded to this circumstance, however, must be considered in connection with the further fact that Miss Lehman was not only in her own employ, but that they were close and intimate friends, and that although she had clothed Miss Lehman with the physical possession of the rings, it did not necessarily mean a relinquishment of her dominion over them. However, we think a construction of all the circumstances as bearing upon the intent of the donor was properly a matter for the jury. In view of their answer to this question, the law will presume that Miss Lehman took the rings as trustee or agent of the plaintiff donee. Note, 3 A. L. R. 926; note, 60 A. L. R. 1059.

It is urged by the appellant that the circuit court should not have entertained jurisdiction of this action, for the reason that a complete remedy was available to the plaintiff in the county court, and for the further reason that the transaction gives rise to an inheritance tax which the county court had the power to protect. The writer is of the opinion that this contention should be sustained, following the precedents reviewed in *Cawker v. Dreutzer,* 197 Wis. 98, 221 N. W. 401, and for the same reasons. However, this action is impliedly if not expressly authorized by sec. 313.09 of the

Statutes, and the court is not inclined to extend the rule of the *Cawker Case* to actions of this character. The collection of inheritance taxes upon gifts such as this is not attended with insurmountable difficulties. The statutes furnish ample machinery for the collection of inheritance taxes on gifts made in contemplation of death.

Judgment went against the defendant for costs. It will be noticed that the defendant is sued in its individual capacity. By its answer the defendant specified its interest in said rings which is referable to its representative capacity as executor of the last will and testament of the deceased. It did not expressly disavow any personal claim to the rings, but such is the general tenor of the answer. It made no motion to be substituted in its representative capacity as defendant. While it was plainly the duty of the defendant to defend the action, and while it plainly should not be mulcted in costs in its individual capacity, we cannot be much concerned with the question: first, because the defendant made no effort to secure a substitution of defendants; and second, because we assume it will be credited with the amount of the costs incurred in its settlement of the estate.

*By the Court.*—Judgment affirmed.