STAGG, Administrator, Appellant, *v.* STAGG, Respondent.

(No. 6,782.)

(Submitted May 19, 1931. Decided June 16, 1931.)

[300 Pac. 539.]

[redacted]

*Mr. S. P. Wilson,* for Appellant, submitted an original and a reply brief and argued the cause orally.

*Mr. Joseph J. McCaffery,* for Respondent, submitted a brief, and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff, as administrator of the estate of Mary Elizabeth Stagg, deceased, expressly waiving the tort, brought this action upon an implied contract to recover the value of certain described articles of jewelry alleged to have been owned by the deceased during her lifetime, and which were converted by the defendant. At the close of plaintiff's evidence, the court sustained the motion of defendant for a nonsuit, and judgment for costs was entered in favor of defendant. Plaintiff's motion for a new trial was overruled, and he has appealed from the judgment.

The complaint is in the usual form, and its sufficiency is not challenged. It shows that Mary Elizabeth Stagg died on January 19, 1919, and that John A. Stagg was appointed administrator of her estate on November 19, 1929; that in her lifetime Mary Elizabeth Stagg owned the jewelry described which has an actual value of $15,000; that prior to the commencement of the action defendant wrongfully took the articles of jewelry into her possession with the intent to convert them to her own use, and that plaintiff has demanded that defendant pay him the value thereof, which demand has been refused.

The answer denies that the articles of jewelry were owned by the deceased in her lifetime, puts in issue the value of the

jewelry, and, by way of affirmative defenses, alleges, in substance, that James P. Stagg is the father of John A. Stagg, and was the husband of Mary Elizabeth Stagg until her death; that on July 24, 1922, defendant was united in marriage with James P. Stagg; that the articles of jewelry in question were given to defendant by James P. Stagg, the then owner, on May 30, 1922, for and on account of their engagement; that since May 30, 1922, defendant has been in the exclusive possession of the jewelry, claiming the same adversely to all persons more than seven and one-half years before the commencement of the action, and that between the thirtieth day of May, 1922, and the sixteenth day of June, 1927, she wore and displayed the articles of jewelry at entertainments where plaintiff was one of the guests present; that this action, which was commenced on December 21, 1929, is barred by statutes of limitations, several of which are specifically pleaded, and that plaintiff is guilty of laches in bringing the action at this time after the death of James P. Stagg, the principal witness for defendant. The reply admits the relationship of the parties, and puts in issue the material affirmative allegations of the answer.

The evidence shows that plaintiff, John A. Stagg, and Ira Stagg are the sons of Mary Elizabeth Stagg and James P. Stagg; that, after the death of Mary Elizabeth Stagg, James P. Stagg and defendant intermarried; that James P. Stagg, who lived in Anaconda, died June 16, 1927. In 1919 John A. and Ira Stagg were attending the University of Los Angeles, California. John A. was then married to Willim Stagg. While attending the University, both John and Ira contracted the "flu," and Mary Elizabeth went to Los Angeles to attend them; while there she became seriously ill, requiring a surgical operation, from which she died. She had the articles of jewelry on her person while in Los Angeles, and exhibited them to plaintiff's wife and others. When warned of the serious character of her illness and the necessity for an operation, she called Willim Stagg to her bedside and handed the jewelry to her saying, "Give these to 'Dad' Stagg, and he is to keep it for the boys until they are old enough

to appreciate it." Willim Stagg, in compliance with this request, delivered the jewelry to James P. Stagg after the death of Mary Elizabeth Stagg, and communicated to him the directions given to her by Mary Elizabeth Stagg, and she testified that James P. Stagg "accepted the jewelry on those conditions." James P. Stagg kept the jewelry in his vault at the store operated by him in Anaconda. At different times he permitted Willim Stagg and the defendant to wear some of the jewelry.

John Stagg testified that "the reason I did not take any action to get possession of these diamonds while my father was living, is because they were given to my father to be given to us when, in his discretion, we were old enough to appreciate them, and I would not sue my father when I had no right to obtain them. I knew my father would do the right thing. He generally did do the right thing, and I believe it was my father's wishes that these jewels be turned over to us."

In 1927 plaintiff saw the jewelry in the vault in his father's store. He said he knew that defendant wore the jewelry at times, and that he spoke to his father about it on several occasions, but he knew they were in the vault in 1922 and in 1926 and 1927. He said that the last time he saw the jewelry before his father's death it was in the possession of the defendant. He testified to the conclusion that he considered himself and his brother the owners of the jewelry at all times, though saying that "technically, under the law, we were not the owners."

Defendant's motion for nonsuit raised the questions whether the cause of action is barred; whether under the evidence plaintiff is the proper party to bring the action; and whether plaintiff has been guilty of laches in instituting the action.

The objection that a cause of action is barred by limitations is an affirmative defense (sec. 9065, Rev. Codes 1921), and the defendant has the burden of proving the facts in support of the plea (*Bielenberg* v. *Higgins*, 85 Mont. 56, 277 Pac. 631). But, when the bar of the statute has been pleaded as a defense, and it appears from the evidence introduced by

plaintiff that his cause of action is barred, a nonsuit is proper. (*Chowen* v. *Phelps*, 26 Mont. 524, 69 Pac. 54; *City of Butte* v. *Goodwin*, 47 Mont. 155, Ann. Cas. 1914C, 1012, 134 Pac. 670; *Ray* v. *Divers*, 81 Mont. 552, 264 Pac. 673.) And, in determining whether plaintiff's evidence sustains defendants's plea, it must, as in the case of a motion for nonsuit or any other ground, be viewed in the light most favorable to plaintiff.

One section of the statutes relied upon as a bar is section 9052, which provides: "For the purpose of computing the time within which an action must be commenced in a court of this state, by an executor or administrator, to recover personal property, taken after the death of a testator or intestate, and before the issuing of letters testamentary or letters of administration, or to recover damages for taking, detaining, or injuring personal property within the same period, the letters are deemed to have been issued within five years after the death of the testator or intestate. But where an action is barred by this section, any of the next kin, legatees, or creditors, who, at the time of the transaction upon which it might have been founded, was within the age of majority, or insane, or imprisoned on a criminal charge, may, within five years after the cessation of such disability, maintain an action to recover damages by reason thereof, in which he may recover such sum, or the value of such property, as he would have received upon the final distribution of the estate, if an action had been seasonably commenced by the executor or administrator."

Without this statute, the statute of limitations would not commence to run until an administrator was appointed, no matter how long a time elapsed between the time of the death of the deceased and the appointment of an administrator. (*Haydon* v. *Normandin*, 55 Mont. 539, 179 Pac. 460.) But the statute of limitations never commences to run until the cause of action accrues. When the conversion takes place before letters of administration are deemed to have been issued, the statute of limitations commences to run at the time fixed by section 9052, for by force of the statute there is then a person

deemed to exist who is authorized to bring an action and against whom the statute runs. The purpose of section 9052 was to fix a time when there was a person entitled to sue on behalf of the estate of a decedent against whom the statute of limitations would run on a cause of action already accrued. But, when the conversion takes place after letters are deemed to have been issued under section 9052, the cause of action begins to run, not at the time fixed by the statute, but from the date of the conversion—from the time the cause of action accrues. And, since section 9052 simply fixes the time when the statute is deemed to commence to run on a cause of action already accrued, of necessity resort must be had to other statutes to ascertain when the cause of action is in fact barred.

The right of one whose property has been converted to waive the tort and sue in assumpsit is well settled. (*First Nat. Bank* v. *Silver*, 45 Mont. 231, 122 Pac. 584; *Young* v. *Bray*, 54 Mont. 415, 170 Pac. 1044; *Galvin* v. *Mac M. & M. Co.*, 14 Mont. 508, 37 Pac. 366; *Yancey* v. *Northern Pac. Ry. Co.*, 42 Mont. 342, 112 Pac. 533; *Ivey* v. *La France Copper Co.*, 45 Mont. 71, 121 Pac. 1061.)

Where a tort is waived and an action brought on an implied contract, the statute of limitations applicable is that governing the latter form of action. (1 C. J. 1040; *Trousdale* v. *Amerman*, 124 Kan. 614, 261 Pac. 826; *Whitaker* v. *Poston*, 120 Tenn. 207, 110 S. W. 1019; note in Ann. Cas. 1913D, 238, and 17 R. C. L. 733, note 5.)

The action here involved is founded upon a promise implied by law to pay the value of the jewelry alleged to have been converted. It is based upon an obligation as that term is defined in section 7394, Revised Codes 1921, and not upon a contract as defined in sections 7467 and 7468.

The statute of limitations applicable is subdivision 3 of section 9031, which describes a limitation of three years for "an action upon an obligation or liability, not founded upon an instrument in writing, other than a contract, account, or promise." (See *Schaeffer* v. *Miller*, 41 Mont. 417, 137 Am. St. Rep. 746, 109 Pac. 970, and *City of Butte* v. *Goodwin*, supra.)

This action, as above noted, was commenced on December 21, 1929. Did the cause of action accrue more than three years before the action was commenced?

According to plaintiff's evidence, the jewelry in question had not been converted by defendant during the lifetime of James P. Stagg. He died on June 16, 1927. While there is evidence that defendant was permitted to wear some of the jewelry before the death of James P. Stagg, yet this evidence does not show that it had been converted by defendant prior to the death of James P. Stagg. Willim Stagg was also permitted to wear the jewelry during the lifetime of James P. Stagg. The evidence, viewed in the light most favorable to plaintiff, was to the effect that James P. Stagg was rightfully in the possession of the jewelry during his lifetime. In consequence, there could be no conversion by him until his possession became wrongful by a refusal to surrender possession upon demand (see generally 38 Cyc. 2032, and *Viers* v. *Webb,* 76 Mont. 38, 245 Pac. 257, and *Gates* v. *Powell,* 7 Mont. 554, 252 Pac. 377), and there is no evidence that any demand was ever made upon him for the possession of the jewelry. It is true that defendant alleges in her answer that the articles of jewelry were given to her by James P. Stagg in 1922, but the burden of establishing that fact rested with defendant. When the evidence relating to the time a cause of action accrues is conflicting, determination of whether it is barred is a question for the jury. (37 C. J. 1254.) Plaintiff's evidence did not disclose the fact that the jewelry was converted before the death of James P. Stagg. According to his evidence, he had no right to institute an action during the lifetime of James P. Stagg, the latter not having sooner determined that the donees were old enough to appreciate the jewelry.

The motion for nonsuit cannot be sustained because of the statute of limitations. What has been said also precluded the granting of the motion on the ground of laches.

The only remaining question is whether plaintiff is the proper party to maintain the action.

Whether plaintiff is the proper party plaintiff depends upon ▉▉▉▉ the legal effect of the arrangement under which Mary Elizabeth Stagg parted with the jewelry. Defendant contends that the transaction as disclosed by the evidence constituted a gift *causa mortis*, and for that reason title to the jewelry passed from Mary Elizabeth Stagg. A gift *causa mortis* is defined in section 6885, Revised Codes of 1921, as follows: "A gift in view of death is one which is made in contemplation, fear, or peril of death, and with intent that it shall take effect only in case of the death of the giver." One of the essential elements of a gift *causa mortis* is that the gift is intended to take effect only in case of the death of the giver (*O'Neil* v. *O'Neil,* 43 Mont. 505, Ann. Cas. 1912C, 268, 117 Pac. 889; *Fender* v. *Foust,* 82 Mont. 73, 265 Pac. 15; *Leyson* v. *Davis,* 17 Mont. 220, 31 L. R. A. 429, 42 Pac. 775), but "a gift made during the last illness of the giver, or under circumstances which would impress him with an expectation of speedy death, is presumed to be a gift in view of the death" (sec. 6886, Rev. Codes 1921). But, if the transaction be viewed as a gift *causa mortis*, still it is apparent that it was not the intention of the donor to have the property pass immediately to the sons upon her death. The jewelry, according to her directions, was to be held by James P. Stagg for the boys until they were old enough to appreciate it. The effect of the transaction was to create a voluntary trust (sec. 7879 et seq., Rev. Codes 1921), which may be done orally when the subject matter is personal property (*Mantle* v. *White,* 47 Mont. 234, 132 Pac. 22). "A voluntary trust is simply a device by which a donor effectuates a gift either of property or of its beneficial use and enjoyment to a designated donee. Even a gift *causa mortis* may be effected by delivery to a third person in trust for the donee, although the gift does not come to the knowledge of the donee, and is not accepted by him, until after the death of the donor. The acts of the trustee or third person receiving the property for the benefit of the donee are deemed to be in the interest of the latter, and the acceptance of the gift is presumed." (*Estate of Podhajsky,* 137 Iowa, 742, 115 N. W. 590, 592.)

When the property was delivered to and accepted by Willim Stagg, the presumption arose that she took it as trustee or agent for the donees, and not as agent of the donor, where, as here, the donor relinquished control and dominion over the property. (*In re Hanson's Estate,* 205 Iowa, 766, 218 N. W. 308; *Williams* v. *Letton,* 228 Ky. 371, 15 S. W. (2d) 296; *Hudson* v. *First Trust Co. in Oshkosh,* 200 Wis. 220, 228 N. W. 121; note in 3 A. L. R. 926, and in 60 A. L. R. 1059; 28 C. J. 694, note 76.) The fact that Willim Stagg was to hold the property only temporarily did not preclude her from holding as trustee for the intended donees. (*In re Hanson's Estate,* supra.) The trusteeship was accepted first by Willim Stagg, and later by James P. Stagg. The subject matter, purposes, and beneficiaries of the trust were reasonably certain within the requirement of section 7885, Rev. Codes 1921. True, the time when the jewelry should have been delivered to the donees was not reasonably certain; but no contention is made that they are not now of sufficient age to appreciate it. Also the rule is that ''a discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion, but may be controlled by the proper court if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust.'' (Sec. 7916, Rev. Codes 1921.)

The trusteeship was terminated upon the death of James P. Stagg. (Sec. 7922, Rev. Codes 1921.) But a trust will not fail because of the want of a trustee. In such case the court will appoint a trustee to carry out the trust. (Sec. 7925, Id.) While the substituted trustee cannot exercise discretionary powers granted to the original trustee by reason of personal confidence reposed in him (26 R. C. L. 1338), yet where, as here, there is no question presented that the intended donees are not now of sufficient age to appreciate the jewelry (the only matter concerning which the trustee was permitted to exercise a discretion), a substituted trustee could be appointed to carry out the trust. Assuming, without deciding, that the trustor has a sufficient interest in seeing that the trust is carried out to maintain an action for that purpose, and assuming

that the administrator of his estate has the same right (but ordinarily its enforcement rests with the beneficiaries of the trust, 26 R. C. L. 1345; and see *Huffine* v. *Lincoln*, 52 Mont. 585, 160 Pac. 820), yet such is not the purpose of this action. This is a straight action at law to recover the value of the jewelry on a contract implied by law because of its alleged conversion by defendant.

To entitle one to maintain an action in conversion he must be entitled to the possession of the property at the time of the conversion (*United States Nat. Bank* v. *Great Western Sugar Co.*, 60 Mont. 342, 199 Pac. 245; *Harrington* v. *Stromberg-Mullins Co.*, 29 Mont. 157, 74 Pac. 413), and it is only the person who has a cause of action in tort who may waive the tort and sue in assumpsit. The legal title to the jewelry, under the evidence here, vested in the trustee, James P. Stagg, with the equitable estate or interest in the beneficiaries, John and Ira Stagg. (39 Cyc. 202.) The trustee, and not the administrator of the trustor's estate, had the right to the possession of the jewelry under the trust agreement. The administrator of the estate of Mary Elizabeth Stagg had no right to the possession of the jewelry when the alleged conversion took place, and is not the proper party to maintain this action.

The judgment therefore must be, and is, affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.